J. A14014/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                                :            PENNSYLVANIA
                           v.                 :
                                                  :
TIMOTHY WELTMER,                  :            No. 949 MDA 2013
                                                  :
                  Appellant       :

Appeal from the Judgment of Sentence, January 8, 2013,
in the Court of Common Pleas of Cumberland County
Criminal Division at No. CP-21-CR-0002334-2011

BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED SEPTEMBER 12, 2014**

Timothy Weltmer appeals the judgment of sentence entered on January 8, 2013, in the Court of Common Pleas of Cumberland County. We affirm.

The disturbing facts of this case, as summarized by the trial court, are as follows

> Roxanna Russell was managing a rental property for her parents at 9 West Street in the Borough of Newville Cumberland County, Pennsylvania.  On July 13, 2011[,] she contacted Corporal Swartz of the Newville Police to report complaints about trash accumulating on the premises.  She also advised the Corporal that she was unable to make contact with the tenants.
>
> Corporal Swartz went to the premises.  While all of the doors and windows were closed, there was still a "pronounced odor of decay" coming from the home.  Corporal Swartz was able to identify the

---

\* Retired Senior Judge assigned to the Superior Court.

smell as coming from "a decaying living thing, animal or human." Ms. Russell unlocked the front door to allow the Corporal to enter. Based upon his extensive experience with the smell of human remains, he believed that a body may be found inside. As he entered the door[,] he was immediately overcome by the putrid smell and was forced to retreat to obtain protective gear.

When he re-entered the residence with protective gear he was confronted with a horrifying scene. There was cat hair and feces covering everything. The remains of seven dead cats were scattered throughout the home. The corporal also found eleven living cats that were flea infested and emaciated. Two of those eventually died. The temperature in the house was well over 100 degrees and the cats had no food or water.

[Appellant] and his fiancé had moved out of the residence some months earlier. They moved in with friends who lived only 150 yards down the street. Rather than take the cats with them, they left them in the apartment. Seven of the cats died of starvation before the police arrived. The remaining eleven cats were forced to eat the remains of those that had died.[1]

Trial court opinion, 10/9/13 at 2-3 (citations to the record and footnotes omitted).

Additionally, Dr. Douglas Ray, a doctor of veterinary medicine, testified that he did not examine the carcasses but came to the conclusion that the animals died of starvation. (Notes of testimony, 10/16-17/12 at 79.) Dr. Ray testified it would take weeks or months depending on the climate

---

[1] There were three large bags of cat food in the bathroom. However, since the door was closed, the cats could not access the food.

conditions for the cats to reach this state. (***Id.*** at 80.) The doctor also testified that the carcasses appeared to be moved, indicating the other cats were eating some of the dead cats. (***Id.*** at 81.)

Appellant was arrested and charged with 9 counts of cruelty to animals graded as a misdemeanor of the first degree, 60 counts of cruelty to animals graded as summary offenses, and 20 counts of vaccination required. Prior to trial, he filed a motion to suppress the warrantless search of the residence. A hearing was held on September 25, 2012, and the motion was denied. Following a jury trial, appellant was convicted of 9 counts of cruelty to animals as a result of the starvation death of the cats. The trial court also found him guilty of 16 summary counts of cruelty to animals. On January 8, 2013, appellant was sentenced to an aggregate term of 2 to 23 months' incarceration.[2]

Appellant failed to file post-sentence motions or a direct appeal; however, the trial court treated an oral motion made by appellant to reinstate his post-sentence and appellate rights as a petition under the Post Conviction Relief Act[3] and the court granted the motion. (Docket #26.) Counsel was appointed and filed a timely post-sentence motion alleging that trial counsel was ineffective and requesting the court to modify his sentence.

---

[2] Appellant's fiancé, Michele Lynn Ryan, entered a guilty plea to similar charges as a result of the cats' deaths.

[3] 42 Pa.C.S.A. §§ 9541-9546.

(Docket #40.) Thereafter, appellant was granted leave to amend his post-sentence motion upon receipt of the sentencing transcript. Appellant filed an amended post-sentence motion. (Docket #41.)

On April 9, 2013, an evidentiary hearing was held. Appellant waived his right to PCRA review following a lengthy colloquy. (Notes of testimony, 4/9/13 at 3-6.) Thereafter, on April 10, 2013, the trial court denied his motion to modify sentence; and on May 22, 2013, the remainder of the motion was denied. (Docket #44, 45.) On May 24, 2013, appellant filed a timely notice of appeal. Appellant complied with the trial court's order to file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has filed an opinion.

Appellant presents the following issue for our review:

> I. WHETHER THE TRIAL COURT ERRED IN FAILING TO SUPPRESS ALL EVIDENCE OBTAINED FROM APPELLANT'S RESIDENCE?
>
> II. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT A NEW TRIAL ON THE BASIS OF AFTER-DISCOVERED EVIDENCE RELATED TO THE ISSUE OF WHETHER THE POLICE HAD PROBABLE CAUSE AND EXIGENT CIRCUMSTANCES TO JUSTIFY THE WARRANTLESS ENTRY INTO APPELLANT'S RESIDENCE?
>
> III. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT A NEW TRIAL ON THE BASIS OF INEFFECTIVENESS OF COUNSEL?

> IV. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANT WITHIN THE AGGRAVATED RANGE?

Appellant's brief at 4.

The first issue presented is whether the court erred in denying appellant's motion to suppress. Appellant argues that the facts known to the corporal when he entered the house were not sufficient to justify the warrantless entry and search. Our standard for reviewing an order denying a motion to suppress is as follows:

> We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by the defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

*Commonwealth v. Hughes*, 908 A.2d 924, 927 (Pa.Super. 2006).

We briefly review the facts presented at the suppression hearing. The corporal testified that he had information that the tenants were unable to be contacted and the property was in complete disarray. (Notes of testimony, 9/25/12 at 4-5, 12, 22.) Upon arrival, Corporal Swartz detected a noxious odor coming from inside the residence even though all the doors and windows were closed. He believed the odor was from "a decaying living thing, animal or human." (*Id.* at 5.) The corporal entered the residence to

discover the source of the odor, "looking for somebody who might have passed on." (**Id.** at 6.) Based on his experience, he tied the smell to "advanced human decay." (**Id.** at 7.)

Immediately upon opening the door, several cats ran out. (**Id.** at 6.) Corporal Swartz testified that upon entering the residence, he was only able to remain inside for five or six seconds before being "overcome by the condition of the building" and had to "vomit." (**Id.**) The corporal walked back to the police department to obtain a protective mask. (**Id.** at 8.) The corporal then re-entered. No human remains were recovered but Corporal Swartz observed several dead cats and six live animals; other live animals were later found. (**Id.** at 9.) The temperature inside was over 100 degrees and there were "clouds of flying insects within the residence." (**Id.** at 10.)

Following appellant's suppression hearing, the trial court determined the corporal was not investigating a crime, but rather, was responding to an exigent circumstance when he smelled "living decay" coming from within the residence. (Docket #22.) The court found Corporal Swartz lawfully entered the residence as he suspected someone might be dead inside. (Trial court opinion, 10/9/13 at 3.)

It is well established that "[a]bsent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment and Article 1, [Section] 8 of the Pennsylvania

Constitution." ***Commonwealth v. Gibbs***, 981 A.2d 274, 279 (Pa.Super. 2009), ***appeal denied***, 3 A.3d 670 (Pa. 2010). "The term 'exigent circumstances' has become a term of art, and generally describes a situation where a more orderly process must yield to an urgent necessity for immediate action." ***Commonwealth v. Revere***, 888 A.2d 694, 698 n.5 (Pa. 2005). When determining whether exigent circumstances exist,

> a court must balance the individual's right to be free from unreasonable intrusions against the interest of society in quickly and adequately investigating crime and preventing the destruction of evidence. "It requires an examination of all of the surrounding circumstances in a particular case . . . and the inherent necessities of the situation at the time must be scrutinized." The standard cannot be inflexible because the reasonableness of searches must be determined on a case-by-case basis.

***Commonwealth v. Stewart***, 740 A.2d 712, 717 (Pa. Super. 1999) (citations omitted).

We observe that police are required to serve the community in innumerable ways, from pursuing criminals to rescuing animals in distress. While the Fourth Amendment's warrant requirement is the cornerstone of our protections against unreasonable searches and seizures, it is not a barrier to a police officer seeking to help someone in immediate danger. ***See***, ***e.g.***, ***Mincey v. Arizona***, 437 U.S. 385, 392 (1978) (generally, police are allowed to make warrantless searches when a life-threatening emergency exists); ***Commonwealth v. Norris***, 446 A.2d 246 (Pa. 1982) (warrantless search permitted when officers have good faith belief that

someone within is in peril of bodily harm); ***Commonwealth v. Maxwell***, 477 A.2d 1309 (Pa. 1984) (generally, police are allowed to make warrantless searches when a life-threatening emergency exists). In the words of the United States Supreme Court:

> We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. . . . The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.

***Mincey***, 437 U.S. at 392 (citations and quotation marks omitted).

In other jurisdictions, the odor of decomposing flesh or reliable information of death have been held to constitute an emergency situation sufficient to justify an immediate warrantless search of premises because the apparent death may turn out to be a barely surviving life, still to be saved. ***E.g.***, ***Patrick v. State***, 227 A.2d 486 (Del. 1967); ***People v. Brooks***, (1972), 7 Ill.App.3d 767, 775-777, 289 N.E.2d 207; ***State v. Epperson***, (Mo. 1978), 571 S.W.2d 260; ***People v. Molnar***, 774 N.E.2d 738 (N.Y.2d 2002) (entry proper where "the smell surely suggested . . . that it was caused by a rotting body"); ***see generally*** 2 W. LaFave, Search & Seizure Sec. 6.6(a) (1978).

Appellant essentially argues that the suspicion of a dead person inside a home cannot be the basis for a warrantless search as a dead person does

not need aid. (Appellant's brief at 11-12.) We disagree. As our supreme court stated in **Commonwealth v. Maxwell**, 477 A.2d 1309 (Pa. 1984), "[t]his mordant hindsight overlooks one of the limited reasons for this warrantless exception. Generally, police are allowed to make warrantless searches when a life threatening emergency exists." **Id.** at 1315, citing **Mincey**, **supra**. While the odor of decomposing flesh would indicate death, others might have been present who could have been in immediate need of help to prevent death. As the Commonwealth notes, highlighting the exigency of the situation is that, in addition to the dead animals discovered, live animals were also found. Unfortunately, two of these cats were not able to be saved and died after rescue.

We hold that the exigent circumstances presented by this record justified the entry and original search of the house as "reasonable" under the Fourth Amendment to the United States Constitution. Corporal Swartz had a duty to enter and see if anyone was in need of assistance. It was the uncertainty as to what would confront the corporal upon entry that created the justification and need to take immediate action. That the odor was that of a dead animal does not negate the possibility that a person, or other animals, may have been severely injured under intolerable circumstances justifying the need for immediate police action. As stated in **Wayne v. United States**, (D.C.Cir. 1963), 318 F.2d 205, 212:

> the business of policemen and firemen is to act, not
> to speculate or meditate on whether the report is

correct. People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process. Even the apparently dead often are saved by swift police response.

As exigent circumstances for the warrantless search existed, there is no merit to appellant's argument.

Appellant also avers that the protective sweep was improper. His argument again hinges on the fact that there were no dead humans. (Appellant's brief at 12.) We disagree. Given the condition of the premises, immediate action was required to attempt to save other animals. Corporal Swartz testified that immediately upon opening the door, several cats ran out. Such evidenced a necessity to further search for animals, which were observed in plain view.

Appellant's second issue concerns whether the trial court committed an error by denying appellant's motion for a new trial on the basis of after-discovered evidence. Specifically, appellant claims that Ms. Russell informed trial counsel that after telling the police her initial concerns about the property, she returned to the residence and conducted a search. She explained that she entered the premises as she "fear[ed] there's something or someone dead in the place". (Notes of testimony, 4/9/13 at 12.) She found dead cats but no humans. (*Id.* at 11-13.) Trial counsel testified that Ms. Russell told him after trial that she conveyed what she observed during her search to the police prior to their entry. (*Id.* at 15-16.) However, at

the post-sentence motion hearing, Ms. Russell did not remember telling the police what she found inside prior to the police entering. (*Id.* at 13.)

"When we examine the decision of a trial court to grant a new trial on the basis of after-discovered evidence, we ask only if the court committed an abuse of discretion or an error of law which controlled the outcome of the case." *Commonwealth v. Padillas*, 997 A.2d 365, 361 (Pa.Super. 2010) (citation omitted), *appeal denied*, 14 A.3d 826 (Pa. 2010). "If a trial court erred in its application of the law, an appellate court will correct the error." *Id.* (citation omitted).

> To obtain relief based on after-discovered evidence, [an] appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. The test is conjunctive; the [appellant] must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted.

*Commonwealth v. Foreman*, 55 A.3d 532, 537 (Pa.Super. 2012) (internal citations omitted).

We can quickly dispose of this claim. As the trial court notes, evidence concerning Ms. Russell's testimony fails multiple prongs of the above test. Because it is a conjunctive test, however, we need only find that the evidence does not satisfy one of the required elements. We therefore examine whether appellant could have obtained the evidence prior to the

conclusion of the trial by exercising reasonable diligence. Clearly, counsel was aware of Ms. Russell's existence prior to the suppression hearing. There is no explanation why defense counsel did not consult her prior to both the suppression hearing or the jury trial; thus, there is no evidence that it was discoverable only after trial. Moreover, assuming the fact that Ms. Russell had entered the home and relayed what she observed to the police, it would have clearly added to the exigency of the officer's entry. Appellant is not entitled to relief.

The third issue is a claim of ineffectiveness of trial counsel. Appellant argues that trial counsel failed to call Ms. Russell as a witness at the suppression hearing.

Generally, a defendant cannot raise claims of ineffectiveness of counsel on direct appeal. *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002). In addressing appellant's claim of ineffectiveness, we note that the trial court relied on *Commonwealth v. Barnett*, 25 A.3d 371 (Pa.Super. 2011) (*en banc*), *vacated and remanded*, 84 A.3d 1060 (Pa. 2014), which held that, unless an appellant makes an express, knowing, and voluntary waiver of review pursuant to the PCRA, this court will not engage in review of ineffective assistance of counsel claims on direct appeal. (Notes of testimony, 4/9/13 at 3.) Instantly, a colloquy was conducted and appellant expressly waived his right to petition under the PCRA. However, after the trial court's opinion was filed, our supreme court decided

*Commonwealth v. Holmes*, 79 A.3d 562 (Pa. 2013), which limited *Barnett*.

The *Holmes* court reaffirmed the general principle that ineffective assistance of counsel claims must be deferred to collateral review. Notwithstanding this general rule, our supreme court created two limited exceptions, both falling within the trial court's discretion. The *Holmes* court summarized the exceptions as follows:

> First, we appreciate that there may be extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice; and we hold that trial courts retain their discretion to entertain such claims.
>
> . . . .
>
> Second, with respect to other cases and claims, including cases such as [*Commonwealth v. Bomar*, 573 Pa. 426, 463, 826 A.2d 831, 853 (2003)] and the matter sub judice, where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness, including non-record-based claims, on post-verdict motions and direct appeal, we repose discretion in the trial courts to entertain such claims, but only if (1) there is good cause shown, and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA. In other words, we adopt a paradigm whereby unitary review may be available in such cases only to the extent that it advances (and exhausts) PCRA review in time; unlike the so-called *Bomar* exception, unitary review would not be made

> available as an accelerated, extra round of collateral attack as of right . . . . This exception follows from the suggestions of prior Court majorities respecting review of prolix claims, if accompanied by a waiver of PCRA review.

*Holmes*, *supra* at 563-564 (footnotes omitted).

Here, although the trial court, following the *Barnett* procedure, secured the waiver of PCRA rights by appellant, it did not make a good cause showing as now required by *Holmes*. However, the *Holmes* court, in attempting to clarify and reconcile numerous decisions dealing with ineffectiveness claims raised on unitary and collateral review, established a new paradigm for trial courts to follow going forward. Therefore, we find no basis at this point to remand for a determination of good cause shown. Moreover, under *Holmes*, it may well have been sufficient for a good cause showing that appellant's 2 to 23-month sentence might well preclude his pursuit of collateral relief. Rather, we agree with the trial court that there is no merit to appellant's claim that counsel was ineffective for failing to call Ms. Russell at the suppression hearing. As addressed in resolving appellant's after discovered evidence claim, Mr. Russell's testimony would not have affected the suppression court's determination of exigency.

The final issue presented challenges the discretionary aspects of sentencing for which there is no automatic right to appeal. *Commonwealth v. Koren*, 646 A.2d 1205, 1207 (Pa.Super. 1994). This appeal is, therefore, more appropriately considered a petition for allowance

of appeal. 42 Pa.C.S.A. § 9781(b). Two requirements must be met before a challenge to the judgment of sentence will be heard on the merits. **Koren**, **supra**. First, the appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence. **Id.**; Pa.R.A.P. 2119(f). Second, he must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. 42 Pa.C.S.A. § 9781(b); **Commonwealth v. Urrutia**, 653 A.2d 706, 710 (Pa.Super. 1995), **appeal denied**, 661 A.2d 873 (Pa. 1995).

The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis. **Commonwealth v. Maneval**, 688 A.2d 1198, 1199-1200 (Pa.Super. 1997). Generally, however, in order to establish a substantial question, the appellant must show actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. **Id.**

Appellant has included in his brief the mandatory concise statement of reasons relied upon for allowance of appeal from the discretionary aspects of his sentence. (Appellant's brief at 8.) Therein, appellant complains that the sentencing court abused its discretion by sentencing him within the aggravated range while failing to consider his rehabilitative needs, mitigating

circumstances, and by focusing solely on aggravating factors.[4] Appellant has raised a substantial question; however, we find the issue to be meritless. *See Commonwealth v. Hyland*, 875 A.2d 1175, 1183 (Pa.Super. 2005), *appeal denied*, 890 A.2d 1057 (2005) (indicating substantial question presented when issue raises question of whether trial court sentenced in aggravated range without considering mitigating circumstances).

When imposing a sentence, the court must consider the following factors: protection of the public, the gravity of the offense in relation to the impact on the victim and the community, and the rehabilitative needs of the defendant. *Commonwealth v. Walls*, 926 A.2d 957, 962 (Pa. 2007). In imposing a sentence in the aggravated range, a sentencing court may consider any legal factor. *Commonwealth v. Bowen*, 975 A.2d 1120, 1122 (Pa.Super. 2009).

> In reviewing sentencing decisions, we apply an abuse of discretion standard:
>
> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality,

---

[4] This issue was preserved in appellant's post-sentence motion.

> prejudice, bias or ill will, or arrived at a
> manifestly unreasonable decision.

***Commonwealth v. Zurburg***, 937 A.2d 1131, 1135 (Pa.Super. 2007),

***appeal denied***, 953 A.2d 542 (Pa. 2008), quoting ***Commonwealth v.***

***Rodda***, 723 A.2d 212, 214 (Pa.Super. 1999) (***en banc***).

Again, appellant was sentenced to not less than two nor more than 23 months in connection with the charges involving the dead and sick cats; the sentences on each count were in the aggravated range and made to run concurrent with each other. We have conducted a review of appellant's claim along with the information set forth at the sentencing hearing and conclude that appellant's sentence was fair and appropriate.

While the trial court's explanation of its sentence is relatively brief, the court clearly articulated its reason for imposing a sentence in the aggravated range: "we have sentenced in the aggravated range and that's because of the sheer number of animals involved and the appalling nature of [appellant's] conduct." (Notes of testimony, 1/8/13 at 7-8.) "The court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b) . . . . [T]he record as a whole must reflect due consideration by the court of the statutory considerations." ***Commonwealth v. Coulverson***, 34 A.3d 135, 145-146 (Pa.Super. 2011), citing ***Commonwealth v. Feucht***, 955 A.2d 377, 383 (Pa.Super. 2008). The trial court indicated that it considered the pre-sentence investigation report and the sentencing guidelines. "Where the

sentencing judge had the benefit of a pre-sentence report, it will be presumed that he was aware of relevant information regarding appellant's character and weighed those considerations along with the mitigating statutory factors." ***Commonwealth v. Fullin***, 892 A.2d 843, 849-850 (Pa.Super. 2006). The sentencing court satisfies its requirement of stating its reasons for the sentence imposed when it indicates it has been informed by a pre-sentence report. ***Commonwealth v. Burns***, 765 A.2d 1144, 1150 (Pa.Super. 2000), ***appeal denied***, 782 A.2d 542 (Pa. 2001). In its opinion, the court further explained

> [Appellant] allowed nine cats to starve to death. The nine that survived did so only by feeding off the corpses of those who had died. He locked them in a flea infested home, without food, water or air conditioning. They were forced to starve to death in putrid conditions even though there was food in the home and even though [appellant] lived within walking distance. We were convinced that any lesser sentence would not have been appropriate."

Trial court opinion, 10/9/13 at 6.

Appellant's challenge to the discretionary aspects of sentencing merits no relief; the sentencing court's discretion will not be disturbed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary
Date: 9/12/2014

- 18 -