**Jason GUERERRI, Appellant, Defendant Below,**

v.

**STATE of Delaware, Appellee, Plaintiff Below.**

No. 375, 2006.

Supreme Court of Delaware.

Submitted: Dec. 20, 2006.

Decided: March 29, 2007.

---

27. *Id.*

David J. Haley, Wilmington, Delaware, for appellant.

Elizabeth R. McFarlan, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

STEELE, Chief Justice.

Jason Guererri appeals his conviction and sentence on the following drug charges: Possession with Intent to Deliver Marijuana, Maintaining a Dwelling for Keeping Controlled Substance, Use of a Vehicle for Keeping Controlled Substances, Second Degree Conspiracy, and Possession of Drug Paraphernalia. On appeal, Guererri claims that the Superior Court judge erred as a matter of law when he denied Guererri's motion to suppress evidence derived from a police officer's allegedly illegal search of his residence. Because the emergency doctrine exception to the Fourth Amendment justified the officers' broad search of Guererri's home, we affirm the Superior Court's judgment.

## FACTS AND PROCEDURAL HISTORY

The material facts in this case are undisputed. On February 13, 2005, around 4 a.m., New Castle County Police Officers Cajuste, Jackson and Sergeant Dolan dispatched to Thomas Jefferson Boulevard in Newark, Delaware in response to a 911 call that indicated someone had fired gunshots in that area. Upon arrival, the officers observed a SUV that had been hit by shotgun fire parked on the lawn of 30 Jefferson Boulevard. The police found shell casings in the street. They also observed that shotgun pellets had struck the one-story ranch-style home at 30 Jefferson Boulevard and that shotgun pellets apparently had broken one of the home's storm windows.

The officers spoke to neighbors awakened by the gunfire. They told the officers that they believed that there were people inside the residence because of the SUV parked on the lawn. The officers called the house, but no one answered the telephone. The police knocked on the doors and windows of the home, but received no response. The officers became concerned that someone in the house might have been injured and was in need of emergency assistance. Finally, after a supervisor arrived, one of the officers kicked open the front door and the police entered the house with their weapons drawn, intending to search the entire home for any person in need of emergency assistance.

Upon entry, the police encountered an agitated pit bull and Guererri, who secured the dog. Guererri did not appear to be injured or in need of assistance. The officers also did not observe any broken glass, shotgun pellets or blood immediately inside the house. Upon questioning, Guererri informed the officers that he had been asleep all night and that his roommate might be in the basement.

The officers called down to the basement and initially received no response. Within minutes, Guererri's roommate, Raymond White, came upstairs. White did not appear to be injured or in need of emergency assistance, but was upset that the police were in the house. White became irate and the police handcuffed him. Although Guererri and White indicated that no one else was in the house, two officers went downstairs to finish "clearing the house." As soon as the first officer reached the bottom of the stairs, he smelled marijuana. In a back room of the basement, the officer also observed marijuana plants in plain view.

The police then detained Guererri and White, contacted a magistrate, and obtained a warrant to search the defendants' house and their vehicles. As a result of the search, the police discovered several packages that contained marijuana. Police then "Mirandized" Guererri and interviewed him. Guererri gave an incriminating statement.

The police arrested Guererri and a grand jury later indicted him on several drug charges. The Superior Court judge denied Guererri's pretrial motion to suppress the evidence the police had seized from his house. Thereafter, Guererri went to trial, was convicted and sentenced. Guererri appeals from that conviction.

## DISCUSSION

Guererri presents two issues on appeal, (1) whether the police violated his Fourth Amendment rights when they conducted a sweep of the entire residence for injured persons; and (2) assuming the police conducted an illegal search, whether the judge erred by not suppressing the evidence seized as the fruits of an illegal search.

As we noted in *Lopez v. State*, we apply a dual standards of review to this case: :

Findings of historical fact are subject to the deferential "clearly erroneous" standard of review. This deferential standard applies not only to historical facts that are based upon credibility determinations but also to findings of historical fact that are based on physical or documentary evidence or inferences from other facts. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Once the historical facts are established, the issue is whether an undisputed rule of law is or is not violated. Accordingly, appellate courts review de novo whether there is probable cause for an arrest, as a matter of law.[1]

■ The United States Supreme Court has noted that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."[2] Under certain limited circumstances, however, police are justified in making a warrantless entry and conducting a search of the premises to provide aid to people or property. The United States Supreme Court has upheld a warrantless search of a house after the occurrence of a violent crime when it was reasonable to believe that dangerous people or victims were on the premises.[3] We have recognized this so-called "emergency doctrine" exception to the warrant requirement.[4]

■ Although Delaware courts have not yet done so, other jurisdictions have articulated the showing required to establish the legality of a warrantless search under the emergency doctrine. Specifically, the State must show, by a preponderance of the evidence, that:

(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property. (2) The search must not be primarily motivated by intent to arrest and seize evidence. (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.[5]

A warrantless entry into and following search of a person's home do not violate the Fourth Amendment if this three-pronged test is satisfied.

■ Applying that test, which we now adopt, to these facts, the warrantless entry into Guererri's home satisfies the test's

1. *Lopez v. State,* 861 A.2d 1245, 1248–49 (Del. 2004) (citations omitted).

2. *Payton v. New York,* 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), *quoting United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972).

3. *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

4. *Patrick v. State,* 227 A.2d 486 (Del.1967) (holding that officers' entry into an apartment without a warrant based on a tip that there was an individual dying or dead within the apartment was lawful, and "[t]he preservation of human life is paramount to the right of privacy protected by search and seizure laws and constitutional guaranties; it is an over-riding justification for what otherwise may be an illegal entry. It follows that a search warrant is not required to legalize an entry by police for the purpose of bringing emergency aid to an injured person.") *Id.* at 489.

5. *People v. Bondi,* 130 Ill.App.3d 536, 85 Ill. Dec. 773, 474 N.E.2d 733, 736 (1984), *quoting* 2 W. LaFave, Search & Seizure § 6.6(a), at 469 (1978); *See United States v. Deemer,* 354 F.3d 1130, 1132 (9th Cir.2004); *State v. Frankel,* 179 N.J. 586, 847 A.2d 561, 569 (2004); *State v. MacElman,* 149 N.H. 795, 834 A.2d 322, 326 (2003); *People v. Cook,* 117 A.D.2d 748, 749, 498 N.Y.S.2d 472 (N.Y.App. Div.1986); *State v. Resler,* 209 Neb. 249, 306 N.W.2d 918, 923 (1981).

first prong. As Guererri concedes, the Superior Court judge properly held that the police entered his home without a warrant because they reasonably believed that someone in the home might be in need of emergency assistance. Guererri's Fourth Amendment claim instead focuses on the extensive search of his entire home. Guererri argues that "[t]he police had no basis in fact, in reasonable inferences, or in totality of the circumstances, to justify a search of the entire residence after both residents were unharmed and accounted for on the first floor." Thus, the issue is whether the warrantless search of Guererri's house satisfied the second and third prongs of the emergency doctrine test.

Under the second prong of the emergency doctrine test, officers must conduct the search primarily to achieve a community caretaking function, rather than to pursue a law enforcement objective.[6] That was the officers' purpose here. Confronted with a crime scene suggesting several shotgun firings, unresponsive residents and the neighbors' speculation that people were in the house, the officers' entered Guererri's house in response to facts revealing a probable emergency situation. The facts here do not fairly suggest a motivation to apprehend and arrest Guererri or to seize evidence. The officers were not acting with law enforcement motivations; when they began their search, they had no reason to believe any crime had been committed or was being committed by Guererri in his home. The record is consistent with a good faith effort to aid

potential victims of shotgun fire and with the officers' primary concern for health and safety of any people that might be found in Guererri's house.

■ To satisfy the third prong of the test, there must be a "direct relationship between the area to be searched and the emergency."[7] Thus, the search may include not only a search of the premises to find people in need of aid, but also a protective sweep to ensure that no further danger is present.[8] The scope of a warrantless search under the emergency aid exception is limited to "those areas necessary to respond to the perceived emergency."[9]

In *Tierney v. Davidson*,[10] the Second Circuit decided a case involving almost identical issues under similar facts and circumstances. In *Tierney*, the police responded to a report of a domestic dispute. People outside of Tierney's home advised the police that shouting had ended just before the police arrived. An officer then entered Tierney's home without knocking or identifying himself. After Tierney assured the officer that there had been no fight, the officer continued to search the premises. Tierney later brought a § 1983 action[11] against the officer, claiming that his search was unlawful. The Second Circuit held that the search of the home was justified because the officer reasonably believed he was locating the other people involved in the domestic dispute, a search

6. *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Commonwealth v. Waters,* 20 Va.App. 285, 456 S.E.2d 527, 530 (1995).

7. *People v. Mitchell,* 39 N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607, 610 (1976).

8. *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Michigan*

*v. Tyler,* 436 U.S. 499, 509–10, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978).

9. *United States v. Stafford,* 416 F.3d 1068, 1075 (9th Cir.2005).

10. 133 F.3d 189 (2d. Cir.1998).

11. 42 U.S.C.A. § 1983.

that was necessary to ensure the safety of the occupants.[12]

*Tierney* is persuasive. Both Tierney and Guererri claim that the investigating officers should have accepted their representations that no one else was in the house or in need of emergency assistance. Like the officer in *Tierney*, the officers here reasonably disbelieved Guererri's statements because "defendants' behaviors and their answers to questions did not make any sense."[13] As the *Tierney* court noted, it may be a dereliction of duty for the officers to have left Guererri's premises without searching for potentially injured parties.[14]

There also was a reasonable nexus between the emergency and the area searched. At the time the officers entered Guererri's house, they had no knowledge of how many people were actually inside, nor did they know if anyone had been injured during the shootings. Thus, the police properly restricted their search to areas inside Guererri's house where they might find potential gunshot victims. Their search was not unlimited or random, such as, for example, peering into drawers, cupboards or wastepaper baskets.[15] Here, after the police confronted the defendants who apparently were in no need of emergency assistance, it was reasonable for them to check the rest of the house "to see if there was anybody else down or hurt inside the residence." The police had reason to search the basement for potential victims and did so without exceeding the bounds of their authority under the emer-

gency doctrine. Therefore, because the officers had a reasonable basis for an emergency search and the scope of their search was likewise reasonable under the circumstances, they did not violate the Fourth Amendment.

Our finding that the search was proper disposes of Guererri's second claim that the trial court erroneously denied his motion to suppress the evidence seized as a result of the unlawful search. Guererri concedes that the police saw the contraband in "plain view" during the search of his house. Because "the police may seize any evidence that is in plain view during the course of their legitimate emergency activities,"[16] they properly seized the contraband.

### CONCLUSION

Because the emergency doctrine exception to the Fourth Amendment justified the officers' broad search of Guererri's home, we AFFIRM the judgments of the Superior Court.

---

12. *Tierney*, 133 F.3d at 199.

13. The trial judge noted that "[f]or example, it was off that many neighbors heard the shooting, but Defendants did not. Thus, the police had reason to doubt anything Defendants told them, including anything they said about no one else being in the house." *State v. Guererri*, I.D.#: 0502010828 (Dec. 15, 2005, J. Silverman).

14. *Tierney v. Davidson*, 133 F.3d 189, 198 (2d. Cir.1998).

15. *State v. Frankel*, 179 N.J. 586, 847 A.2d 561, 568 (2004).

16. *Mincey*, 437 U.S. at 393, 98 S.Ct. 2408; *Tyler*, 436 U.S. at 509, 98 S.Ct. 1942.