SUPERIOR COURT
OF THE
STATE OF DELAWARE

Jeffrey J Clark
Judge

Kent County Courthouse
38 The Green
Dover, DE  19901
302-735-2111

October 4, 2017

Gregory Babowal, DAG
Department of Justice
102 West Water Street
Dover, DE  19904

Suzanne MacPherson-Johnson, Esq.
Office of the Public Defender
Sykes Building
45 The Green
Dover, DE  19901

> **RE:  *State v. Huey Roundtree*
> *#1701009784***

Submitted:  September 27, 2017
Decided:  October 4, 2017

Counsel:

This is the Court's decision regarding Defendant Huey Roundtree's (hereinafter "Mr. Roundtree's") motion to suppress. The State seeks to justify a warrantless seizure of a firearm and drug related evidence based on the alleged need for a "security sweep" of the mobile home where it recovered this evidence. For the reasons discussed below, the authority cited by the State does not justify such a search. Furthermore, the facts presented at the hearing do not separately justify a protective sweep, as recognized by the United States Supreme Court in *Maryland v. Buie*[1].

---

[1] 494 U.S. 325 (1990)

## Facts and Background

The facts cited herein are those found by the Court after the suppression hearing regarding this matter. This matter arises from a January 17, 2017 warrantless search of Defendant Huey Roundtree's residence. The Dover Police Department was searching for Andre Brown for questioning in connection with a homicide and robbery that occurred on January 10, 2017. The location of the search was Mr. Roundtree's residence, a single-wide mobile home located at the Kings Cliffe Mobile Home Park in Dover, Delaware.

Mr. Roundtree's residence was also the address listed as one of Andre Brown's potential residences in a database used by the Dover Police Department. As a result, on January 16, 2017, the Dover Police surveilled Mr. Roundtree's home for the entire day. On that day, they did not observe Andre Brown at the residence. The next day, at approximately 3:00 p.m. the Dover Police arrived again at the home. Before knocking on the door, they established a perimeter area around the mobile home so that no one could enter or leave unobserved. After Mr. Roundtree opened his door, Officer Martinek detected the odor of burnt marijuana. At the suppression hearing, Officer Martinek also testified that it was dark in the home, but he could observe another man sitting on a couch. Officer Martinek then asked Mr. Roundtree if anyone else was home, and Mr. Roundtree responded that there was not. Almost immediately thereafter, another person appeared from a bedroom. Officer Martinek testified that the perimeter team reported hearing noises from that room earlier. At that point, the officer suspected that Mr. Roundtree was lying to him.

The officers then immediately entered Mr. Roundtree's residence and began a protective sweep. During the search, the police observed several items of contraband: a marijuana crusher, a green bullet-proof vest, and the pistol grip of a shotgun on a shelf inside a closet. Officer Martinek testified that the closet was searched because someone could have been hiding in it. After observing these items,

2

the police applied for a search warrant of the residence. After executing the search warrant, the police discovered that the grip was attached to a Remington 870 tactical shotgun. The State then charged Mr. Roundtree with Possession of a Firearm by Person Prohibited, Drug Dealing, Conspiracy in the Second Degree, Possession of Marijuana, Illegal Possession of a Controlled Substance, and Endangering the Welfare of a Child.

Mr. Roundtree filed this motion to suppress, seeking to exclude all evidence seized from Mr. Roundtree's residence on January 17, 2017. He alleges that the police conducted a warrantless search of his residence in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 6 of the Delaware Constitution. Mr. Roundtree argues that the officers' "security sweep" exceeded its permissible bounds and constituted a warrantless search of the residence. The State responds that that its initial search was justified pursuant to *Guererri v. State.*[2] The State cites no other authority.

### Standard

In a motion to suppress evidence seized during a warrantless search, the State bears the burden of establishing that the challenged seizure comported with the rights guaranteed by the United States Constitution, the Delaware Constitution, and relevant statutes.[3] In a suppression hearing, the Court serves as the finder of fact.[4] The State's burden is to establish the search's legality be a preponderance of the evidence.[5]

---

[2] 922 A.2d 403, 407 (Del. 2007)
[3] *State v. Lambert*, 2015 WL 3897810 at *3 (Del. Super. Ct. 2015)(*aff'd Lambert v. State*, 149 A.3d 227 (Del. 2016))
[4] *State v. Hopkins*, 2016 WL 6958697 at *2 (Del. Super. Ct. 2016)
[5] *Hunter v. State*, 783 A.2d 558, 560 (Del.2001)

3

**Discussion**

A warrantless search and seizure is presumptively unreasonable, subject to certain exceptions.[6] The United States Supreme Court has noted that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."[7] Nevertheless, it has recognized certain limited exceptions to the prohibition against warrantless searches of a person's home.[8] One of these exceptions is the "emergency doctrine", which allows an otherwise illegal entry if there is an immediate need for the assistance of police to protect life or property.[9] Delaware Courts have long recognized the emergency exception to the Fourth Amendment's prohibition against warrantless searches and seizures.[10] In *Guererri*, the Delaware Supreme Court articulated the three prong test to determine the legality of a search under the emergency doctrine. There, the State must show, by a preponderance of the evidence, that:

> (1) The police have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property. (2) The search must not be primarily motivated by the intent to arrest and seize evidence. (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place being searched.[11]

---

[6] *State v. Hedley*, 593 A.2d 576, 582 (Del. Super. Ct. 1990)
[7] *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct.1371, 63 L.Ed.2d 639 (1980), *quoting United States v. United States District Court*, 407 U.S. 297, 313 (1972)
[8] *Mincey v. Arizona*, 437 U.S. 385, 392 (1978)
[9] *Guererri v. State*, 992 A.2d 403, 406 (2007)
[10] *See Patrick v. State*, 227 A.2d 486 (Del. 1967)(holding that officers' entry into an apartment without a warrant based on a tip that someone within the apartment was dying or dead was lawful, and "[t]he preservation of human life is paramount to the right of privacy protected by search and seizure laws and constitutional guarantees; it is an overriding justification for what otherwise may be an illegal entry. It follows that a search warrant is not required to legalize an entry by police for the purpose of bringing emergency aid to an injured person.")
[11] 922 A.2d 403, 406 (Del. 2007)

A warrantless entry and subsequent search of a person's home do not violate the Fourth Amendment if this three-pronged test is satisfied.[12] If the entry is valid, the search must have a direct relationship between the area searched and the emergency.[13] The search of the premises permits a limited protective sweep to ensure that no further danger is present.[14] In the instant matter, the primary issue is whether the initial warrantless entry into Mr. Roundtree's residence was proper and legal. If the entry by the police officers was legal, then if follows that items observed in plain view while making a protective sweep would serve as a basis for a search warrant.

The State relies solely on *Guererri*[15] for its argument that the warrantless entry and protective sweep was valid. The State incorrectly conflates the concept of a protective sweep, which is in essence an expanded search incident to arrest made in a premises, with the separate emergency doctrine relied upon in *Guererri*. In *Guererri*, police responded to a 911 call that someone fired gunshots in the area.[16] Upon arrival, police observed an SUV hit by shotgun fire, shell casings on the street, and evidence that pellets had struck a house.[17] Neighbors told police they believed people were inside the residence because the SUV was on the lawn.[18] The police called the home and knocked on the doors and windows, but received no answer.[19] Worried that someone in the house may have been injured by shotgun fire, the police kicked open the front door.[20] Upon entry, they encountered Guererri.[21] He informed the officers that he was awakened by gunshot fire and that his roommate, Raymond

---

[12] *Id.*

[13] *People v. Mitchell*, 39 N.Y. 2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607, 610 (1976)

[14] *Mincey v. Arizona*, 437 U.S. 385, 392 (1978)

[15] 922 A.2d 403 (Del. 2007)

[16] *Id.* at 405

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

White, was in the basement.[22] Police called down to the basement but White initially did not respond.[23] White then came upstairs, and at that point, he became irate and the police handcuffed him.[24] The police then went downstairs to finish "clearing the house" and observed marijuana plants in plain view in the basement.[25] Police then obtained a warrant to search the remainder of the house.[26]

Unlike those of the *Guererri* case, the facts in this case do not support application of the emergency doctrine. Namely, the first prong of the test set forth in *Guererri* requires that "[t]he police have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property."[27] In *Guererri*, the police were responding to an emergent situation. They feared that someone inside the house was either shot or in immediate danger.

In the case at hand, the State presented no evidence of an emergency situation that could justify a warrantless entry and search of Mr. Roundtree's residence. To the contrary, the Dover Police were searching for Andre Brown, who *was wanted for questioning* in connection with a robbery and homicide. Not only did the robbery and homicide not occur at the Kings Cliffe Mobile Home Park, it occurred *a week prior* to the search on January 10, 2017. Moreover, the Dover Police had surveilled Mr. Roundtree's home on January 16, 2017, the day prior to the search, and set up a perimeter around the home on January 17, 2017 before knocking on Mr. Roundtree's door. Under these facts, because of (1) the time between the alleged robbery and this search, (2) the time an officer spent at the residence the day before the search,

---

[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.* at 406

and (3) the lack of persuasive evidence that the officers feared for the safety of life or property before the search, the Court concludes that there was no emergency.

The State argues that Mr. Roundtree's lie to the officers that no one else was in the residence justified the entry to the home. However, in the absence of any other articulable facts, such evidence does not create an emergency. Furthermore, there is no evidence that the appearance of another individual from the bedroom created an emergency situation. There is no evidence that the person, or anyone else in Mr. Roundtree's home, was acting in a manner that would alarm the officers. If Mr. Roundtree's lie that no one else was home made the officers suspicious, the next step would be to obtain a search warrant. Indeed, the officers had established a perimeter around the home already and had conducted a day's worth of surveillance. There was little risk Andre Brown could escape if he was in the home. An officer cannot enter a person's home based on mere suspicion in a non-emergency situation. Limiting a warrantless entry into someone's home is the most foundational and important purpose of the Fourth Amendment. In this regard, invoking the emergency doctrine exception requires specific articulable facts on the record to support it. Since the facts found at the hearing do not establish that the State satisfied the first prong of the test set forth in *Guererri*, the Court need not address the second and third prongs.

Mr. Roundtree cites *State v. Hedley*[28] in support of his argument that the warrantless search was not justified by the emergency doctrine. In *Hedley*, the court correctly recognized the separate nature of the protective sweep doctrine of *Maryland v. Buie*[29] versus the emergency doctrine, which was later articulated by the Delaware Supreme Court in *Guererri*. In this regard, the *Hedley* court correctly noted that "[w]hile these exceptions may overlap, to some extent, and some

---

[28] 593 A.2d 576 (Del. Super. Ct. 1990)
[29] 494 U.S. 325 (1990)

7

authorities have not always distinguished the two, the exceptions are distinct."[30] Unfortunately some Delaware courts have failed to distinguish between these two distinct exceptions, which is understandable considering that *Guererri* also refers to a "protective sweep".[31]

In contrast to the emergency doctrine, however, the protective sweep doctrine articulated by *Buie* concerns warrantless searches of a home that are incident to an arrest. The doctrine permits a quick and limited search of a premises, incident to an arrest, to protect the safety of the officers and others.[32] Nowhere in the record was it established that Mr. Brown was the subject of an arrest warrant. In fact, Officer Turner testified at the suppression hearing that Andre Brown was merely wanted for questioning. Moreover, the State also clarified in its argument that he was wanted only for questioning. Accordingly, there is no basis on the record before the Court to permit the application of the protective sweep doctrine. The entry of the premises was unjustified. It follows that the protective sweep of the premises was also unjustified.[33]

Finally, the evidence of a burnt marijuana odor is not relevant to the Court's decision in this case. Here, the State does not assert that the protective sweep was related to the use of marijuana. Nor does the State advance an argument that the smell of marijuana justified the warrantless search. In the absence of the State articulating an argument that such an odor justified the search, the Court will not separately address the issue of whether the smell of marijuana, detected by Officer Martinek at the door, somehow justified the search of the home without a warrant.

---

[30] *State v. Hedley*, 593 A.2d 576, 580 (Del. Super. Ct. 1990)

[31] 922 A.2d 403, 406 (providing that "the search may include not only a search of the premises to find people in need of aid, but also a protective sweep to ensure that no further danger is present")(citations omitted)

[32] *State v. Hedley*, 593 A.2d 576, 580 (Del. Super. Ct. 1990)

[33] After the matter was submitted, both parties submitted supplemental letter arguments shortly before the Court issued this Order. The Court has considered the additional arguments of the parties, which do not change its decision.

**Conclusion**

Here, the State failed to demonstrate by a preponderance of the evidence that the emergency doctrine exception to the Fourth Amendment justified the officers' search. Furthermore, the State did not justify the search pursuant to the protective sweep doctrine. Accordingly, Mr. Roundtree's motion to suppress is **GRANTED.**

**IT IS SO ORDERED.**

<u>/s/Jeffrey J Clark</u>

JJC:jb

9