## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,          :
                            :          Kent County
        v.                  :
                            :
                            :
LEWIS FOREMAN 1901014406;   :
TYRA R. MIFFLIN 1901014409; and :
KEYARRA J. JOHNSON 190614411 :
                            :
        Defendants.         :

Submitted: August 27, 2019
Decided: August 29, 2019

## ORDER

Defendants' Motion to Suppress
*Granted.*

Gregory R. Babowal, Esquire of the Department of Justice, Dover, Delaware; attorney for the State.

Anthony Capone, Esquire of the Office of the Public Defender, Dover, Delaware; attorney for Defendant Foreman.

Thomas D. Donovan, Esquire of the Office of Conflict Counsel, Dover, Delaware; attorney for Defendant Mifflin.

Adam D. Windett, Esquire of Hopkins & Windett, LLC, Dover, Delaware; attorney for Defendant Johnson.

WITHAM, R.J.

*State v. Lewis Foreman #1901014406*
*State v. Tyra R. Mifflin #1901014409*
*State v. Keyarra Johnson #190614411*
August 29, 2019

## INTRODUCTION

Before the Court is the Motion to Suppress filed by the Defendant Lewis Foreman, joined by defendants Tyra R. Mifflin and Keyarra J. Johnson, and the State's Response in opposition. Defendants seek suppression of all evidence obtained following a search of the house where Mr. Foreman was a frequent overnight guest by Delaware State Police. As the facts stand presently, it should appear to the Court that:

## FACTUAL AND PROCEDURAL HISTORY

1. On January 24, 2019, Dover Police Department Dispatch received a call from a manager of Target reporting that an unknown black male suspect had exposed himself to a customer in a parking lot and fled in a gold Jaguar.[1] Dover Police believed that this incident was connected to a January 19, 2019 indecent exposure investigation in which they had previously identified Lewis Foreman as a suspect.[2] Mr. Foreman was known to reside at 79 Stevenson Drive in Dower, Delaware.[3] In response to the call from Target on January 24, Master Corporal Turner (hereinafter "Cpl. Turner") and Patrolman Weir (hereinafter Ptl. Weir) started looking for Mr. Foreman in the area of Stevenson Drive.[4]

---

[1] Defendant's Motion to Suppress (hereinafter "D. Mot.") at ¶ 1.

[2] *Id.* at ¶ 2.

[3] *Id.* at ¶ 3. (Keyarra J. Johnson (Mr. Foreman's sister), joined as a Defendant, resided at 79 Stevenson Drive, and Mr. Foreman was a frequent overnight guest at the residence).

[4] *Id.*

*State v. Lewis Foreman #1901014406*
*State v. Tyra R. Mifflin #1901014409*
*State v. Keyarra Johnson #190614411*
August 29, 2019

2. Ptl. Weir observed a gold Jaguar near Stevenson Drive and attempted to conduct an investigatory stop of the car.[5] Shortly thereafter, the driver, who police believed to be Mr. Foreman, abandoned the vehicle and fled into the area of Stevenson Drive.[6] The officers pursued Mr. Foreman.[7] The officers lost sight of Mr. Foreman around the rear of 79 Stevenson Drive and did not see him enter the residence.[8] They did, however, see a hat outside the residence and believed that it belonged to Mr. Foreman.[9]

3. Officers believed that the suspect entered the residence.[10] Multiple officers arrived at the residence at that time and formed a perimeter around 79 Stevenson Drive.[11] The officers attempted to contact the residents from the outside, but nobody responded to their efforts.[12] One of the officers, Corporal Musemici (hereinafter "Cpl. Musemici") went to the neighborhood's housing office and reviewed security footage

---

[5] *Id.* at ¶ 4.

[6] *Id.*

[7] *Id.*

[8] *Id.* at ¶ 5.

[9] *Id.*

[10] *Id.* at ¶ 6.

[11] *Id.*

[12] *Id.* at ¶ 7.

3

of the neighborhood, which showed Mr. Foreman entering 79 Stevenson Drive.[13] Thereafter, the Dover Police Special Operations Response Team (hereinafter "SORT") entered the residence to arrest Mr. Terry, who barricaded himself in the attic with his girlfriend but surrendered to police after approximately half an hour.[14] Police did not have a warrant to enter the residence.[15]

4. While inside the residence, Dover Police located marijuana, currency, and drug paraphernalia.[16] Police then sought and received a warrant to search the residence for drug dealing.[17] During the execution of the warrant, police seized marijuana, drug paraphernalia and United States currency.[18]

## THE PARTIES' CONTENTIONS

5. Mr. Foreman contends that the warrantless entry of the residence where he was a frequent overnight guest was unlawful because it violated his rights under the Fourth Amendment of the Constitution of the United States and Article I, Section VI

---

[13] *Id.*

[14] *Id.* at ¶ 8; D. Mot. Ex. A at pg. 5. (The purpose of the Special Operations Response Team is to support the Dover Police Department with a tactical response to critical events and other specialized assignments within the City of Dover).

[15] D. Mot. at ¶ 8.

[16] *Id.* at ¶ 9.

[17] *Id.* at ¶ 10.

[18] *Id.* at ¶ 11.

of the Constitution of the State of Delaware.[19] Mr. Foreman argues that warrantless entry in this case was not justified by any exception to the warrant requirement, including the hot pursuit exception.[20] Accordingly, Mr. Foreman argues that the subsequent search warrant did not establish probable cause to search the residence because it was based on information that was obtained as a result of an illegal entry into the residence.[21]

6. Mr. Foreman asserts that the pursuit was no longer "hot" because police entered the residence long after they lost sight of him.[22] Mr. Foreman further points out that misdemeanor pursuits are inherently less exigent than felony pursuits and, therefore, require a higher burden of demonstrating exigency. Mr. Foreman also states that no exigent circumstances existed in this case to justify the entry.[23]

7. The State claims that police had the right to decide how to handle a "barricaded suspect."[24] The State asserts that "barricaded suspect" situations are

---

[19] *Id.* at ¶ 12, 15.

[20] *Id.* at ¶ 16.

[21] *See Id.* at ¶ 23.

[22] *Id.* at ¶ 17.

[23] *Id.* at ¶ 18-20 (The suspect was sought for misdemeanors, none of which included any contraband or evidence which would be lost or destroyed. There was no sign that the suspect was armed and no risk to public safety with the suspect cordoned off inside his home by a police perimeter.).

[24] *See* State Reply (hereinafter "St. Reply") at ¶ 17.

unique and should be handled differently than other circumstances.[25] Thus, the State argues that police should be allowed a greater degree of flexibility when such factor is present.[26] The State cites to cases where the courts handled "barricaded suspect" situations differently in other contexts.[27] The State cites to *State v. Patton*, where Miranda was not needed during discussions between police and barricaded suspects.[28] The State also cites to *State v. Lambert*, claiming that the court in that case acknowledged that SORT was allowed to do protective sweeps inside a residence prior to issuance of search warrant.[29]

The State further argues that the hot pursuit exception to a warrant requirement also applies in this case because police actions were justified to prevent a suspect's escape.[30]

## LEGAL STANDARD

8. On a motion to suppress evidence seized during a warrantless search or seizure, the State bears the burden of establishing that the challenged search or seizure comported with the rights guaranteed by the United States Constitution, the Delaware

---

[25] *Id.*

[26] *Id.*

[27] *Id.* (See *State v. Patton*, 2001 WL 112074 (Del. Super. 2001); *State v. Lambert*, 2015 WL 3897810 at footnote #4 (Del. Super. 2015).

[28] *Id.*

[29] *Id.* (The case does not stand for this proposition, as discussed below).

[30] *Id.* at ¶ 18.

Constitution, and Delaware statutory law.[31] The burden of proof on a motion to suppress is proof by a preponderance of evidence.[32]

## DISCUSSION

### A. Protective SORT Sweeps

9. The State argues that SORT should have made the determination on how to proceed under these circumstances.[33] Thus, the issue is whether SORT's discretionary decision alone should make a warrantless entry proper.

10. The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, prohibits police from making a warrantless, nonconsensual entry into a person's home for purposes of search or seizure, unless the State can establish that the exigent circumstances make the warrantless entry imperative.[34] The State argues that the warrantless entry was justified in this case because SORT authorized the entry.[35]

11. The State in this case relies on *State v. Lambert*.[36] In *Lambert*, a SORT unit

---

[31] *Hunter v. State*, 783 A.2d 558, 560 (Del. 2001).

[32] *State v. Abel*, 2001 WL 5221276, at *2 (Del. Super. 2011), *aff'd*, 68 A.3d 1228 (Del. 2012), *as amended* (Jan. 22, 2013).

[33] St. Reply at ¶ 17.

[34] *State v. Keith*, 2010 WL 8250816, at *3 (Del. Super. July 30, 2010) (citing *Payton v. New York*, 445 U.S. 573, 590 (1980).

[35] *See* St. Reply at ¶ 17.

[36] *Id.*

ordered defendant out of his residence, and defendant complied.[37] Shortly thereafter, police searched the residence in reliance on a warrant.[38] Defendant in *Lambert* challenged the validity of the warrant, and the court agreed that the search was executed before the search warrant application was completed.[39] The court stated, however, that because the procedure that would have led to a valid search of the residence was well underway, officers' conduct fell within the inevitable discovery exception to the search warrant requirement.[40] The SORT unit also conducted a protective sweep of the residence prior to the search.[41] However, defendant did not challenge the sweep, and the court did not address the issue of whether the warrantless sweep was valid under the circumstances.[42]

12. Nothing in *Lambert* supports the proposition that the SORT sweep is proper without consideration of other circumstances. Protective sweeps by SORT may be justified without a warrant under the "emergency doctrine."[43] In this case, SORT

---

[37] *Lambert*, 2015 WL 3897810 at *2.

[38] *Id.*

[39] *See Id.* at *4 (one of the detectives affirmed the warrant, and the Judge signed it. The warrant was then faxed back to the detective, and the detective signed it and faxed it back. The search occurred in the middle of this exchange).

[40] *Id.* at *6.

[41] *Id.* at footnote #4.

[42] *Id.*

[43] *Hall v. State*, 14 A.3d 512, 516 (Del. 2011).

8

engaged in the warrantless search of the residence, not a protective sweep. The State presents no facts to support a proposition that the team acted in a response to an emergency. There was no evidence of threats, shots fired or any other evidence of an emergency situation. Furthermore, as opposed to *Lambert* where the warrant was applied for, police in this case made no steps to secure a warrant prior to the search.

13. In this case, it is commendable that law enforcement handled the situation in such a manner that ensured the safety of everyone involved. This is especially important given the fact that multiple people were present in the residence. However, the determination of whether law enforcement can enter a residence without a warrant is governed by law, and no law exists that authorizes such an entry based *solely* on the presence and decision of a SORT unit.

### B. Hot Pursuit.

14. Regarding the warrantless entry, the Court must determine whether there were exigent circumstances present, even if police entered a residence in hot pursuit of the Defendant. After an analysis of the exigent circumstances factors, the Court concludes that there were no exigent circumstances present that justified the warrantless entry into the residence.

15. In Delaware, a search of a residence without a warrant is legal in some circumstances, including if the search is made for a person whom law enforcement were in hot pursuit of, provided the pursuer has probable cause to believe that the individual has committed a felony or a misdemeanor.[44]

---

[44] 11 *Del. C.* § 2302.

16. Hot pursuit, however, is not absolute. Absent consent, warrantless searches and seizures are presumed unreasonable and violative of the Fourth Amendment, even when supported by probable cause, unless exigent circumstances exist to justify the intrusion.[45] Exigent circumstances have been found to exist, and a warrantless intrusion is justified, where there is "a hot pursuit of a fleeing felon, or imminent destruction of physical evidence ... or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling."[46] Specifically, the following factors are relevant in determining exigency:

(1) the degree of urgency involved and the amount of time needed to obtain a warrant;

(2) the reasonable belief the contraband is about to be removed;

(3) the risk of danger to the officers guarding the site while waiting for the search warrant;

(4) information indicating the possessors of contraband are aware that the police are on their trail; and

(5) police knowledge that traffickers of the suspected contraband characteristically attempt to dispose of destructible contraband and escape.[47]

17. The Defendant correctly states that when the officers entered the residence,

---

[45] *State v. Wilson*, 2001 WL 845749, at *3 (Del. Super. July, 6, 2001) (citing *Welsh* v. *Wisconsin*, 466 U.S. 740, 749-50 (1984)).

[46] *Id.* (citing *Minnesota v. Olsen*, 495 U.S. 91, 100 (1990)) (citations omitted).

[47] *Wilson*, 2001 WL 845749, at *3 (citing *State v. Ada*, 2001 WL 660227, at *3 (Del. Super. Jun.8, 2001)).

they did not have a search warrant. However, the Defendant was a suspect in at least two active investigations.[48]

18. Other facts are far from clear. First, there is some dispute on whether the officers were in hot pursuit of the Defendant. Hot pursuit ("fresh pursuit") is described as a pursuit of a suspect without unreasonable delay.[49] The evidence in this case suggests that the pursuit ended when the officers surrounded the residence, suspecting that the Defendant entered it.

19. Even assuming the officers were in hot pursuit of the Defendant, the Court's analysis must include consideration of any exigent circumstances present in concluding the lawfulness of the entry into a residence where the Defendant was a frequent overnight guest.

20. The State contends that the warrantless entry was justified because it was necessary to prevent a suspect's escape.[50] At first glance, this might meet the standard. However, upon further review of the factors to determine exigency, it actually may not.

21. Here, it does not appear that there was a great sense of urgency involved in apprehending the Defendant. Indeed, there were multiple officers present on the scene, and it is apparent that each officer was observing possible exits from the

---

[48] D. Mot. at ¶ 2 (It appears that police did not have a warrant for Mr. Foreman's arrest prior to his detention).

[49] *See* 11 Del. C. § 1931.

[50] St. Reply at ¶ 18.

11

residence. Furthermore, as the Defendant was hiding in the attic, he did not appear to be trying to escape. Under the circumstances of this case, the risk that the suspect could have escaped the residence was not significant because the residence was surrounded by police. Therefore, it appears that police could have waited for a warrant. Given the time it took for the SORT unit to arrive (over 1 hour), the officers could have obtained a search warrant.

22. The State did not indicate that police knew (or suspected) that any contraband was going to be removed from the residence at the time they pursued the Defendant into the house. The State did not indicate that there would have been a risk of danger to the officers if they had waited for a search warrant while taking further steps to secure the perimeter of the residence. In this case, Mr. Foreman was likely aware that the officers were following him. However, the officers had no knowledge of any contraband present in the residence.

### C. Barricaded Suspect

26. The next issue is whether the fact that Mr. Foreman was a "barricaded suspect" justifies the warrantless entry. Mere presence of a "barricaded suspect" has not been recognized as one of the exceptions to a warrant requirement under Delaware law.[51] One way to analyze the presence of the "barricaded suspect" is to determine whether this circumstance constitutes an emergency.[52] Under the "emergency

---

[51] No State has recognized a mere presence of a "barricaded suspect" as an exception to a warrant requirement.

[52] The State does not assert that "emergency doctrine" exception to a warrant requirement applies here.

doctrine" police may conduct a warrantless search if the State can demonstrate that: (1) an emergency exists and their assistance is required to protect life or property, (2) the search is not primarily motivated by intent to arrest or seize evidence, and (3) some articulable reason exists to connect the emergency and the area of search.[53] As mentioned before, the State in this case did not present any facts to support the application of the "emergency doctrine" to the situation that involved a "barricaded suspect." Furthermore, the officers were not aware of the fact that Mr. Foreman barricaded himself in the attic until after they have already entered the residence.

## CONCLUSION

27. For the reasons mentioned above, the Court **GRANTS** the Defendants' Motion to Suppress evidence seized as a result of the unlawful entry and resulting search warrant.

IT IS SO ORDERED.

Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh
oc:    Prothonotary
cc:    Gregory R. Babowal, Esquire
        Anthony Capone, Esquire
        Thomas D. Donovan, Esquire

---

[53] *Guererri v. State*, 922 A.2d 403, 406, (Del. 2007).