**Ernest R. PATRICK, Defendant Below, Appellant,**

**v.**

**The STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Feb. 24, 1967.

liams, Wilmington, for defendant below, appellant.

Francis A. Reardon and Michael N. Castle, Deputy Attys. Gen., for plaintiff below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice:

The defendant appeals from his conviction of murder in the second degree on the grounds (1) that the evidence was circumstantial and insufficient to support the conviction; and (2) that evidence introduced at trial was illegally obtained.

The pertinent threshold facts are undisputed:

Ernest R. Patrick, the defendant, lived with Joseph Woods and Beverly Goodwyn. Beverly was Woods' mistress but she was also intimate with Patrick on occasion. On the night before the killing, Beverly and Woods had an altercation, over her leaving the house without him, during which Woods struck Beverly, drawing blood, and she attempted to cut him with a razor blade. Beverly and Patrick spent the next day and evening together. After some drinking, they returned to the Woods apartment about 11:00 P.M. En route, Beverly expressed fear of what Woods might do when they arrived. The door of the apartment was open; they entered the living room; and Beverly asked Patrick if Woods was in the bedroom. Patrick went to the bedroom and returned, saying that Woods was there.

Against this background, the jury heard Beverly, called by the State, testify as follows:

That after returning to the living room, Patrick stated that he was going to kill Woods; that Patrick picked up a brick supporting the sofa, entered the hallway, and turned toward the bedroom. Beverly testified that she heard noises which sounded like a brick hitting the bed and like Woods

Robert B. Walls, Jr., and Robert M. High, of Morris, James, Hitchens & Wil-

choking; that it did not sound like the brick was hitting Woods. Beverly testified that Patrick returned to the living room with blood on his hands, saying Woods was dead, and then went to the bathroom to wash his hands; that she went into the bedroom and saw Woods' bloody body on the bed; that, in response to her question, Patrick repeated that Woods was dead; that she and Patrick immediately left the apartment and returned to her sister's home where they spent the balance of the night.

Patrick, testifying in his own defense, stated that it was Beverly who took the brick from under the sofa, went to the bedroom, and killed Woods; that it was he in the living room, not Beverly, who heard the thuds of the blows.

Admitted in evidence was the shirt worn by Patrick on the night in question, bearing stains of Group A blood—Woods' blood type but not Patrick's. Also admitted were pieces of brick, stained with Group A blood, found on the bed and headboard, bloodstained bed clothing, and other items taken by the police from the room in which Woods' body was found. The State proved that the cause of Woods' death was depressed fracture of the skull. Patrick was indicted for murder in the second degree and was found guilty. He appeals.

## I.

Patrick contends that the evidence against him is circumstantial and insufficient to support the conviction.

■ To establish a fact in issue, circumstantial evidence must be inconsistent with any other rational conclusion. Holland v. State, 9 Terry 559, 107 A.2d 920 (1954). Patrick argues that the circumstantial evidence against him fails to meet this test because it is a reasonable conclusion from the evidence that Beverly or someone else killed Woods. We disagree.

Accepting Beverly's testimony, as the jury was entitled to do, the evidence adduced by the State excludes every reasonable hypothesis except that of Patrick's guilt. Beverly's testimony, combined with the other evidence adduced by the State, is wholly inconsistent with Patrick's innocence.

Crystalized, the case before the jury resolved itself into a test of the credibility of Patrick versus the credibility of Beverly. Having accepted Beverly's testimony, as it obviously did, the jury was justified in finding unreasonable any hypothesis that Woods was killed by someone other than Patrick.

■ Accordingly, we hold that the evidence, although circumstantial, was sufficient to support the conviction.

## II.

The defendant claims that articles introduced in evidence against him were obtained by the police by unlawful search and seizure. The facts pertinent to this issue are as follows:

Woods' body was discovered by his employer, W. A. Larrimore, on the morning after the killing. Larrimore found Woods in bed, a bloody "mess", with his head "beaten in with a brick." Larrimore "panicked"; he could not tell whether Woods was dead or alive. He immediately called the police and, upon their arrival, stated that Woods had a head wound and might be dead. The police officers immediately entered the premises. They found Woods dead, with fragments of brick "five to six inches from his left ear"; and on the headboard of the bed they found half a brick bearing apparent blood stains. The police took photographs in the room, had the body removed, and took into custody the brick pieces, the bed clothing, Woods' clothing, and a wire cord. All items taken were open to view in the room in which the body was found. The police had no search warrant when they entered the premises.

The contention is now made that, absent a warrant, the articles were taken in violation of 11 Del.C. §§ 2301 and 2303[1] and of the defendant's constitutional guaranties against unreasonable search and seizure[2]; that the admission in evidence of such articles requires reversal of the conviction.

The basic question is whether the police were in the Woods apartment lawfully. That this question must be answered in the affirmative is obvious.

■■■ The general rules governing searches and seizures are subject to the exception of emergency situations, sometimes called the "exigency rule." The reasonableness of an entry by the police upon private property is measured by the circumstances then existing. The right of police to enter and investigate in an emergency, without an accompanying intent either to seize or arrest, is inherent in the very nature of their duties as peace officers, and derives from the common law. United States v. Barone (C.A.2) 330 F.2d 543 (1964). The preservation of human life is paramount to the right of privacy protected by search and seizure laws and constitutional guaranties; it is an overriding justification for what otherwise may be an illegal entry. It follows that a search warrant is not required to legalize an entry by police for the purpose of bringing emergency aid to an injured person. Frequently, the report of a death proves inaccurate

and a spark of life remains, sufficient to respond to emergency police aid. As a general rule, we think, an emergency may be said to exist, within the meaning of the "exigency" rule, whenever the police have credible information that an unnatural death has, or may have, occurred. And the criterion is the reasonableness of the belief of the police as to the existence of an emergency, not the existence of an emergency in fact. Wayne v. United States, 115 U.S.App.D.C. 234, 318 F.2d 205 (1963); Davis v. State, 236 Md. 389, 204 A.2d 76 (1964); compare Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 1200, 2 L.Ed. 2d 1332 (1958).

■■■ Applying these tenets to the instant case, we have no doubt that the entry of the police was reasonable under the circumstances. The officers were informed by Larrimore that Woods was dead or dying from a head wound. Clearly, the police had good reason to believe that a life was in balance and that emergency aid might be needed. Under the circumstances, it was the duty of the police to act forthwith upon the report of the emergency—not to speculate upon the accuracy of the report or upon legal technicalities regarding search warrants. It follows that the entry by the police was reasonable and lawful.

■■■ After the entry, there was no further search by the officers. All articles

1. 11 Del.C. §§ 2301 and 2303 provides:
"§ 2301. Necessity of compliance with statute
"No person shall search any house, place, conveyance or person without the consent of the owner (or occupant, if any) unless such search is authorized by and made pursuant to statute."
"§ 2303. Search without a warrant when incident to arrest
"A search of a house or other place may be made without a warrant if—
"(1) The search is made incidental to a lawful arrest; and
"(2) The search is made contemporaneously with the arrest; and

"(3) The arrest is made on the premises searched; and
"(4) The premises are under the control of the person arrested; and
"(5) The search is made in order to find and seize either (A) the fruits of the crime, (B) the means by which the crime was committed, (C) weapons and other things to effect an escape from custody; and
"(6) The search without a warrant is necessary to prevent the escape or removal of the person or thing to be searched for."

2. Del.Const., Art. 1, § 6, Del.C.Ann.; U.S.Const., 4th Amend.

taken were in open view in the room in which the body was found. The seizure of evidence in open view upon a lawful entry violates no right of privacy. Wayne v. United States, supra. That which is in open view is not the product of a search. United States v. Barone, supra; Ker v. State of California, 374 U.S. 23, 36–37, 83 S.Ct. 1623, 1635, 10 L.Ed.2d 726 (1963).

Accordingly, we conclude that there was no violation of statute or constitutional guaranty as to the evidence here in question.

* * *

There was no error as assigned by the defendant. The judgment below is affirmed.