# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE ) 
)
v. ) ID No. 2502006448
)
BRYAN AZOFEIFA-RAMIREZ, )
)
Defendant. )

Submitted: February 4, 2026
Decided: March 10, 2026

## OPINION

*Upon Defendant's Motion to Suppress:*
**GRANTED, in part, and DENIED, in part.**

Cassandra M. Balascak, Esquire, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. *Attorney for the State of Delaware*.

Alicia Ann Porter, Esquire, Benton & Shockley Law, PA, Dover, Delaware. *Attorney for Defendant*.

1

## I. Introduction

An individual's right to privacy is fundamental.[1]  Delawareans enjoy broad constitutional protections against unreasonable searches and seizures by the government.[2]  These protections, however, only extend so far.[3]  There are government intrusions into privacy that are justified in circumstance and made in a legally permissible manner.[4]

When government intrusion is justified and legally permissible, an individual's interest in privacy harmonizes with the public interest of law enforcement.[5]  When government intrusion is unconstitutional, privacy interests and

---

[1] *State v. Holden*, 54 A.3d 1123, 1128 (Del. Super. 2010) ("An examination of Delaware Constitutional history and Delaware statutory law demonstrates paramount concern for the protection of individual privacy.  The first search and seizure protections for Delaware citizens were contained in the Declaration of Rights and Fundamental Rules of the Delaware State.")

[2] U.S. Const. amend. IV; Del. Const. Art. I § 6.  *See Dorsey v. State*, 761 A.2d 807, 817 (Del. 2000) ("In *Jones*, this Court concluded that the history of the search and seizure provisions in the Delaware Constitution reflected *different* and *broader* protections than those guaranteed by the Fourth Amendment.") (emphasis in original).

[3] *Maryland. v. King*, 569 U.S. 435, 446-47 (2013) ("The Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner.") (cleaned up).

[4] *Id.*

[5] "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967)).  "*Katz* posits a two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search?  Second, is society willing to recognize that expectation as reasonable?" *Id.* (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

interests in law enforcement often move directly into conflict.[6] Courts then face the difficult task of balancing these interests together.[7]

The Court faces such a challenge in this case. The State obtained a general warrant to search certain categories of data on Defendant Bryan Azofeifa-Ramirez's smartphone.[8] After the Defendant filed a motion to suppress the evidence extracted pursuant to the general warrant,[9] the State obtained a more limited warrant to search only some categories of data listed in the first warrant.[10] All evidence extracted from the second warrant was evidence already extracted from the first warrant.[11]

The State now argues that any evidence extracted pursuant to the second warrant should not be suppressed because it was obtained through an independent source—the second warrant.[12] The important constitutional question before the Court is whether the independent source doctrine can be used to avoid suppression of evidence previously discovered pursuant to a general warrant.

The Court holds that when the independent source doctrine applies, evidence obtained pursuant to a general warrant is not disqualified from use at trial.

---

[6] *Id.*
[7] "[T]he permissibility of a particular law-enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Robertson v. State*, 596 A.2d 1345, 1350 (Del. 1991) (quoting *Goldsmith v. State*, 405 A.2d 109, 111 (Del. 1979)).
[8] D.I. 17 Ex. A ["First Warrant"].
[9] D.I. 17.
[10] D.I. 25 Ex. 1 ["Second Warrant"]
[11] *See* First Warrant; Second Warrant.
[12] D.I. 21; D.I. 25 at 2-3; D.I. 27 at 6-10; D.I. 35.

Nevertheless, because the State obtained a second warrant that was overbroad, the Court will suppress portions of the evidence obtained under the second warrant.

## II. Factual and Procedural Background

### A. New Castle County Police are dispatched to the victim's residence.

On January 9, 2025, New Castle County Police Officer Barton was dispatched to the victim's residence.[13] According to the victim, she was experiencing issues with the water temperature in her master bedroom shower and attempted to fix it herself.[14] During this process, the victim discovered a hidden camera in the shower.[15] The camera was found in the shower handle with a wire leading from the hatch in the victim's closet.[16] The victim also noticed there was a hole in the closet floor that led to the basement bathroom.[17]

The victim told Officer Barton that her ex-husband—Bryan Azofeifa-Ramirez (the "Defendant")—installed the shower in 2017.[18] The victim also communicated

---

[13] D.I. 27 at 1.
[14] *Id.*
[15] *Id.*
[16] *Id.* at 1-2.
[17] *Id.* at 2.
[18] *Id.* Based on the facts provided by the parties, it appears to the Court that the victim and the Defendant previously lived together at the victim's residence until November 2021. First Warrant at 4. In November 2021, the victim moved out of the residence pending a divorce from the Defendant. *Id.* The victim then returned to the residence in August 2022, after she kept the home in divorce proceedings. *Id.* During this period of the victim's absence, the Defendant continued living at the residence. *Id.* While it remains unclear exactly when the Defendant permanently moved out of the residence, Defendant did obtain his own residence sometime after the victim returned in August 2022. *Id.* After moving out, however, the Defendant maintained access to the victim's residence and made visits. *Id.*

4

that the Defendant was the only person who went to the basement, and when he was over, he would spend most of his time down there.[19]  Following Officer Barton's interview of the victim, Detective Feliciano took over the investigation.[20]

**B. The State obtains a warrant to search the Defendant's smartphone.**

Based on the type of camera discovered, Detective Feliciano knew the camera contents could only be viewed once the camera was plugged into an electronic device.[21]  The electronic device would also require a downloaded application that could access the camera's recordings.[22]  On February 4, 2025, the State obtained a search warrant for the Defendant's residence.[23]  The warrant sought to obtain the Defendant's electronic devices.[24]  Officers executed the search warrant and located an Apple iPhone in the Defendant's pocket during the execution of the search.[25]

On February 6, 2025, the State obtained a warrant to search the contents of the iPhone found on the Defendant (the "First Warrant").[26]  The contents sought included: (1) the device's identifying information; (2) saved digital images and

---

[19] D.I. 27 at 2.
[20] *Id.*
[21] *Id.*
[22] *Id.*  Detective Feliciano would later identify the required application as USEE PLUS. First Warrant at 5.
[23] D.I. 27 at 2.
[24] *Id.*
[25] *Id.*  The Apple iPhone was gray and in a black Pelican case. First Warrant at 1.
[26] D.I. 27 at 2.  The First Warrant included language that allowed a forensic examination of "the digital contents of any and all attached storage devices" for the Defendant's iPhone. First Warrant at 1.

videos; (3) emails, device notifications, device events, and/or device timeline; (4) internet history; and (5) applications.[27] Extraction of the iPhone under the First Warrant produced "videos and photos, search history, emails, web bookmarks, device info, and applications usage logs."[28]

## C. The Defendant files a Motion to Suppress all evidence obtained under the First Warrant.

On December 23, 2025, the Defendant filed a motion to suppress (the "Motion") all evidence obtained under the First Warrant.[29] Before the Court could rule on the First Warrant, the State obtained a more limited warrant to search the Defendant's iPhone (the "Second Warrant").[30] The State argued the Defendant's Motion was moot because the State had obtained the Second Warrant and would "not be utilizing contents of the cell phone obtained pursuant to the original search warrant."[31] The Defendant disagreed the Motion was moot, and both parties filed responses on the issue.[32]

---

[27] D.I. 27 at 2-3. The search also contained a temporal limitation between November 21, 2021, at 0000 EST hours to January 9, 2025, at 1235 hours EST. First Warrant at 1.

[28] *Id.* at 3.

[29] D.I. 17. The Defendant's Motion to Suppress was pursuant to alleged violations of the Fourth Amendment to the United States Constitution and Article I, § 6 of the Delaware Constitution. *Id.* at 1. The Defendant's position was that the First Warrant was an unconstitutional general warrant requiring suppression of all evidence discovered pursuant to it. *Id.*

[30] D.I. 27 at 3; Second Warrant.

[31] D.I. 21.

[32] D.I. 24; D.I. 25.

The Defendant argued the Motion was not moot because the First Warrant was a general warrant.[33] The Defendant asserted that while overbroad warrants may be subject to severance or independent-source analysis, the only remedy for a general warrant is suppression of all evidence obtained pursuant to it.[34] The Defendant contended that if the First Warrant was found to be a general warrant, the State could not introduce evidence obtained pursuant to the Second Warrant that was also obtained via the First Warrant.[35]

The State argued that the Motion was moot because the First Warrant was at most overly broad.[36] The State also argued that even if the First Warrant was found to be a general warrant, it did not plan to use any evidence obtained pursuant to the First Warrant.[37] The State would instead use evidence obtained pursuant to the Second Warrant, which was an independent source.[38] In other words, the State's position was that the independent source doctrine applied to general warrants.

**D. The Court finds the First Warrant to be general and orders additional briefing from the Parties.**

The Court scheduled a status conference on January 13, 2026.[39] During the status conference, the Court held that the First Warrant was a general warrant. Based

---

[33] D.I. 24.
[34] *Id.*
[35] *Id.* at 2-3.
[36] D.I. 25 at 1-2.
[37] D.I. 25 at 2-3.
[38] *Id.*
[39] D.I. 26.

7

on the facts presented in the four corners of the affidavit, the Court found nearly every category of data to be searched lacked sufficient particularity that was easily includable in the description.[40] In the Court's view, the lack of sufficient particularity was so extreme that it authorized an "exploratory rummaging" through the vast majority of the Defendant's smartphone.[41]

After declaring the First Warrant to be a general warrant, the Court requested further briefing on two issues: (1) whether there is a difference in the application of the independent source doctrine in cases involving general versus overbroad warrants; and (2) whether the Second Warrant is a general or overbroad warrant.[42] This opinion follows the Parties' completed briefing.

---

[40] First, the warrant authorized an indiscriminate search of all "saved digital images and video[s]" on the Defendant's phone. First Warrant at 1. No further specificity limited the search of this data category. *Id.* Second, the warrant authorized an indiscriminate search of all "emails, device notifications, device events, and/or device timeline[s]." *Id.* The search was not limited to emails with attachments, nor was it limited to emails or notifications regarding the USEE PLUS application. *Id.* Third, the warrant authorized an indiscriminate search of all "internet history." *Id.* The search was not limited to searches of the USEE PLUS application, which are the only searches that could "aid in determining if [USEE PLUS] was used to access the camera." *Id.* at 5. Finally, and most dispositive for the Court, the warrant authorized an indiscriminate search of "Applications." *Id.* at 1. Despite the affidavit identifying only one application—USEE PLUS—necessary for viewing the hidden camera's recordings, the warrant failed to limit the search to this single application. *Id.* The term "applications" could refer to nearly every part of an iPhone and implicates far more categories of data than those listed on the warrant.

[41] The warrant also compounded the lack sufficient particularity by employing "any and all" language. *Id.* The warrant authorized the search of "any and all attached storage devices" for each data category listed in the application. *Id.* Given that the Supreme Court of Delaware has instructed courts to exercise "heightened vigilance" with warrants for digital and electronic devices, the Court determined that the extreme levels of insufficient particularity and "any and all" language justified finding that the warrant was general. *Wheeler v. State*, 135 A.3d 282, 307 (Del. 2016). The Court was not convinced that the temporal period alone could remedy these deficiencies.

[42] D.I. 27 at 3-4.

8

## III.    Legal Analysis

"It is axiomatic that the United States and Delaware Constitutions provide protections to those whose property is subject to an investigatory police search."[43] The Fourth Amendment to the United States Constitution (the "Fourth Amendment") provides protections against unreasonable searches and seizures:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[44]

Article I, § 6 of the Delaware Constitution ("Article I, § 6") reflects similar but "*different* and *broader* protections than those guaranteed by the Fourth Amendment."[45]  Article I, § 6 provides:

> The people shall be secure in their persons, houses, papers, and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation.[46]

Both the Fourth Amendment and Article I, § 6 "require that a warrant be supported by probable cause and describe the places and things to be searched with

---

[43] *Terreros v. State*, 312 A.3d 651, 661 (Del. 2024).

[44] U.S. Const. amend. IV.

[45] *Garnett v. State*, 308 A.3d 625, 645 (Del. 2023) (quoting *Jones v. State*, 745 A.2d 856, 866 (Del. 1999) (emphasis in original)).

[46] Del. Const. Art. I § 6.

particularity."[47] A warrant that is insufficiently particular is unconstitutional and will fall into one of two categories: general or overbroad.[48] A general warrant is the more constitutionally offensive of the two categories.[49]

A general warrant allows law enforcement "to conduct an indiscriminate search"[50] and is invalid because "it vests the executing officers with unbridled discretion to conduct an exploratory rummaging through [the defendant's] [effects] in search of criminal evidence[.]"[51] The "fruits of a general warrant must be suppressed in their entirety,"[52] meaning there "is no room . . . for limited suppression of evidence seized under a general warrant."[53]

An overbroad warrant "describe[s] in both specific and inclusive general terms what is to be seized but authorizes the seizure of items as to which there is no probable cause."[54] Because a portion of an overbroad warrant satisfies constitutional requirements, an overbroad warrant "can be redacted to strike out those portions of the warrant that are invalid for lack of probable cause."[55]

---

[47] *Terreros*, 312 A.3d at 662 (cleaned up).
[48] *Id.* at 662-63.
[49] *Id.* at 663.
[50] *Id.* at 662-63.
[51] *Taylor v. State*, 260 A.3d 602, 617 (Del. 2021) (quoting *United States v. Yusuf*, 461 F.3d 374, 393 n.19 (3d. Cir. 2006)).
[52] *Terreros*, 312 A.3d at 663.
[53] *Taylor*, 260 A.3d at 617.
[54] *Id.* (quoting *Yusuf*, 461 F.3d at 393 n.19).
[55] *Id.*

10

The exclusionary rule prohibits the introduction of evidence obtained through a violation of the Fourth Amendment.[56] The sole purpose of the exclusionary rule is to deter future Fourth Amendment violations, not to redress the injury occasioned by an unconstitutional search.[57] The rule removes the incentive for law enforcement to obtain evidence through unlawful means by disqualifying unlawfully obtained evidence from use at trial.[58]

Not all evidence discovered through an illegal search, however, automatically becomes "sacred and inaccessible."[59] The Supreme Court of the United States has recognized that the deterrence benefits of the exclusionary rule must be weighed against the rule's substantial social costs.[60] Over time, attempts to balance deterrence and avoid social costs have created multiple exceptions to the exclusionary rule—including the independent source doctrine.

The independent source doctrine provides that "unlawfully obtained evidence is admissible if the government also obtains that evidence through an independent legal source."[61] While the policy behind the exclusionary rule is that "the

---

[56] *Herring v. U.S.*, 555 U.S. 135, 139 (2009).
[57] *Davis v. U.S.*, 564 U.S. 229, 236-37 (2011).
[58] *Garnett*, 308 A.3d at 642.
[59] *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920).
[60] *Herring*, 555 U.S. at 141. These social costs include "letting guilty and possibly dangerous defendants go free" and the "toll upon truth-seeking and law enforcement objectives." *Id.*
[61] *United States v. Beck*, 2023 WL 5016614, at *3 (11th Cir. Aug. 7, 2023) (citing *Murray v. United States*, 487 U.S. 533, 542 (1988); *Segura v. United States*, 468 U.S. 796, 814 (1984)).

government should not profit from illegal activity,"[62] the policy behind the independent source doctrine is that the State "should not be put in a worse position 'simply because of some earlier police error or misconduct.'"[63] Thus, "the exclusionary rule has no application [where] the [g]overnment learned of the evidence from an independent source."[64]

As the Supreme Court of Delaware has held, "official misconduct should not fatally taint evidence."[65] Thus, so long as an exception to the exclusionary rule such as the independent source doctrine applies, evidence will not remain tainted.[66] To determine the applicability of the independent source doctrine, courts deploy the two-part test established by the Supreme Court of the United States in *Murray*.[67] Courts first ask whether the police would have applied for the warrant without the material tainted by the illegal search.[68] Courts then ask whether the subsequent warrant was supported by probable cause independent of information acquired during the illegal search.[69]

---

[62] *Garnett*, 308 A.3d at 643 (Del. 2023) (citing *Murray*, 487 U.S. at 542).

[63] *Id*; *State v. Carter*, 2022 WL 1561537 at *5 (Del. Super. May 17, 2022) (citing *State v. Blackwood*, 2020 WL 975465, at *7 (Del. Super. Feb. 27, 2020). *See Nix v. Williams*, 467 U.S. 431, 443 (1984).

[64] *Segura*, 468 U.S. at 805 (citing *Wong Sun v. United States*, 371 U.S. 471, 487 (1963); *Silverthorne*, 251 U.S. at 392).

[65] *Lopez-Vazquez v. State*, 956 A.2d 1280, 1292 n. 40 (Del. 2008) (citing *Jones*, 745 A.2d at 873).

[66] *State v. Matthews*, 2024 WL 5200103, at *4 (Del. Super. Dec. 2, 2024).

[67] *Murray*, 487 U.S. 533.

[68] *Matthews*, 2024 WL 5200103 at *3 (citing *United States v. Price*, 558 F.3d 270, 281 (3d Cir. 2009)).

[69] *Id.*

**A. Evidence obtained pursuant to a general warrant is not disqualified from use at trial when the independent source doctrine exception to the exclusionary rule is applicable.**

Whether the independent source doctrine applies to evidence obtained pursuant to a general warrant is a constitutional question that places an individual's interest in privacy directly in conflict with the public interest of law enforcement. A general warrant can authorize such a deep invasion into an individual's privacy that nothing is off limits for law enforcement to search.[70] The exclusionary rule therefore plays an important function in removing any incentive law enforcement has in seeking such authorization.[71]

But a pure application of the exclusionary rule in relation to a general warrant creates harsh consequences with impactful social costs. "The principal cost of applying the rule is . . . letting guilty and possibly dangerous defendants go free— something that offends basic concepts of the criminal justice system."[72] The exclusionary rule "deprives juries of probative evidence of a crime; and by depriving juries of probative evidence, the exclusionary rule often works at odds with society's interest in prosecuting and punishing criminals."[73] These high social costs could cause a victim to never receive the justice they deserve through no fault of their own.

---

[70] *Terreros*, 312 A.3d at 663.
[71] *Garnett*, 308 A.3d at 642.
[72] *Herring*, 555 U.S. at 141 (quoting *United States v. Leon*, 468 U.S. 897, 908 (1984) (internal quotations omitted).
[73] *State v. Upshur*, 2011 WL 1465527, at *23 (Del. Super. April 13, 2011) (quoting *United States v. May*, 214 F.3d 900, 905-6 (7th Cir. 2000)).

As the Supreme Court of the United States has recognized, nothing about balancing these interests is easy.[74] Even when properly balanced, both the public and private individuals sacrifice portions of their interests to the benefit of one another. In recognition of this dichotomy, the Court carefully analyzes whether the independent source doctrine should apply to evidence obtained pursuant to a general warrant.[75]

After a thorough review of caselaw provided by the Parties and procured through the Court's own research, the Court finds three supporting reasons why the independent source doctrine applies to evidence obtained pursuant to a general warrant. Each of these reasons are discussed below.

1. *A finding that the independent source doctrine is inapplicable to evidence obtained pursuant to a general warrant would be inconsistent with the Supreme Court of Delaware's past recognition of exclusionary rule exceptions.*

The Supreme Court of Delaware has long-recognized exceptions to Delaware's state exclusionary rule.[76] In some instances, Delaware has even adopted exceptions before they entered federal jurisprudence.[77] To date, the Supreme Court

---

[74] *Leon*, 468 U.S. at 907 n.6 (acknowledging that any "rule of evidence that denies the jury access to clearly probative evidence and reliable evidence must bear *a heavy burden of justification, and must be carefully limited* to the circumstances in which it will pay its way by deterring official unlawlessness." (quoting *Illinois v. Gates*, 462 U.S. 213, at 257-58 (1983)) (emphasis added).

[75] *Id.*

[76] The Supreme Court of Delaware has recognized the exigent circumstances doctrine since 1967. *Patrick v. State*, 227 A.2d 486 (Del. 1967). Next year also marks 50 years since the inevitable discovery doctrine was recognized in Cook in 1977. *Cook v. State*, 374 A.2d 264 (Del. 1977).

[77] For example, the Supreme Court of the United States did not recognize the inevitable discovery doctrine in *Nix* until 1984. *Nix*, 467 U.S. 431.

14

of Delaware has recognized the following exceptions to the exclusionary rule: the independent source doctrine;[78] the inevitable discovery doctrine;[79] the attenuation doctrine;[80] the exigent circumstances doctrine;[81] and the emergency doctrine.[82]

These exceptions have each been applied to constitutional violations that vary significantly from one another. Because the Supreme Court has not yet discussed the independent source doctrine in the context of a general warrant—or in the context of Fourth Amendment violations—the Supreme Court's application of exclusionary rule exceptions to other constitutional violations is particularly instructive.

These type of violations, or alleged violations in some cases, include invalid *Terry* stops,[83] out-of-state tracking,[84] illegal entry of a residence without a warrant,[85]

---

[78] *See Norman v. State*, 976 A.2d 843 (Del. 2009) (applying the independent source doctrine to evidence obtained in violation of the defendant's Sixth Amendment rights). *See also Lopez-Vazquez*, 956 A.2d at 1291-92 (acknowledging that "taint may be purged" from evidence pursuant to the independent source doctrine).

[79] *See Cook*, 374 A.2d 264 (applying the inevitable discovery doctrine to possibly tainted evidence).

[80] *See Garnett*, 308 A.3d 625 (applying the attenuation doctrine to tainted evidence).

[81] *See Patrick*, 227 A.2d 486 (applying the exigent circumstances doctrine to tainted evidence).

[82] *See Guererri v. State*, 922 A.2d 403 (Del. 2007) (applying the emergency doctrine to tainted evidence).

[83] *See, e.g., Cook*, 374 A.2d 264 (applying the inevitable discovery doctrine to evidence discovered during a frisk that potentially exceeded reasonableness of finding weapons); *Thomas v. State*, 8 A.3d 1195 (Del. 2010) (applying the inevitable discovery doctrine to evidence discovered pursuant to a valid Terry stop); *Lopez-Vazquez*, 956 A.2d 1280 (applying the attenuation doctrine to evidence obtained pursuant to an illegal Terry stop).

[84] *See, e.g., Ways v. State*, 199 A.3d 101 (Del. 2018) (applying the inevitable discovery doctrine to evidence discovered independently from unconstitutional out-of-state tracking).

[85] *See, e.g., Garnett*, 308 A.3d 625 (applying the inevitable discovery doctrine to evidence obtained from illegal entry into a residence); *Patrick*, 227 A.2d 486 (applying the exigent circumstances doctrine to evidence obtained from an illegal entry into a residence); *Mason v. State*, 534 A.2d 242 (Del. 1987) (applying the exigent circumstances doctrine analysis to an illegal entry into a residence); *Guererri*, 922 A.2d 403 (applying the emergency doctrine to a warrantless search of a

and even deprivation of right to counsel.[86]  These constitutional violations vary in type and degree of government intrusion.

This variety makes sense.  The Supreme Court has never based applications of exclusionary rule exceptions on specific types of constitutional violations or levels of privacy that are violated.[87]  The Supreme Court has rather focused primarily on the circumstances surrounding an alleged constitutional violation, and whether an exclusionary rule comports with the Delaware Constitution.[88]   The Court therefore finds barring the independent source doctrine from applying to general warrants—strictly based on the type of constitutional violation and degree of privacy violated—would be inconsistent with Supreme Court precedent.

2. *The Superior Court of Delaware has recognized the independent source doctrine to apply in the context of both general and overbroad warrants.*

While the Supreme Court of Delaware has yet to directly address the applicability of the independent source doctrine to evidence obtained pursuant to an

---

residence; *Blake v. State*, 954 A.2d 315 (Del. 2008) (applying the emergency doctrine to a warrantless entry and search of a residence).

[86] *See, e.g., Norman*, 976 A.2d 843 (applying the independent source doctrine to evidence obtained in violation of the defendant's Sixth Amendment right to counsel).

[87] None of the cited cases above demonstrate the Supreme Court applying or rejecting application of an exclusionary rule exception based upon the type of constitutional violation committed or the degree of government intrusion into an individual's privacy.  This practice aligns with the Supreme Court of the United States' guidance that the "exclusionary rule is not to redress the injury to the privacy of the search victim." *United States v. Calandra*, 414 U.S. 338, 347 (1974).  Because injury to privacy is not being redressed, the degree of injury should not matter for exclusionary rule analysis.  What matters for the exclusionary rule is simply that a constitutional violation occurred.

[88] For example, in *Dorsey*, the Supreme Court refused to adopt the good faith exception for Delaware's state exclusionary rule because the Delaware Constitution requires probable cause to be present in a warrant.  761 A.2d at 820.

16

unconstitutional warrant, the Superior Court of Delaware has done so multiple times.[89] The Superior Court has applied the independent source doctrine to evidence obtained under both general[90] and overbroad warrants,[91] with these cases often sharing similar facts to those at issue in this case.

The Superior Court has recognized that it ought not to disturb its prior decisions "except for urgent reasons and upon clear manifestation of error."[92] This practice avoids confusion, promotes stability in the law, and recognizes the Supreme Court of Delaware as the tribunal of last resort in this state.[93] After reviewing the Superior Court's prior decisions concerning the independent source doctrine and unconstitutional warrants, the Court finds no urgent reason or clear manifestation of error to justify disturbing our past precedents.

---

[89] *See, e.g., Carter*, 2022 WL 1561537; *State v. Clark*, 2024 WL 4025008 (Del. Super. Aug. 29, 2024); *Matthews*, 2024 WL 5200103. The Defendant has also suggested that the Court's decision in *State v. Robinson* dealt with similar and relevant issues. ID. No. 1706003315, Suppression Decision Hrg. Tr. In *Robinson*, the State obtained four general warrants to search the defendant's smartphone. *Id.* at 2. The State then obtained a fifth warrant, which the State conceded was overbroad. *Id.* at 3. The court suppressed the fifth warrant because it was nearly identical to three of the previously obtained general warrants, which the State had previously admitted were general warrants. *Id.* at 2, 7. *Robinson* never conducted independent source doctrine analysis, making *Robinson* distinct from this case. The Court therefore will not discuss *Robinson* in its analysis.
[90] *See Matthews*, 2024 WL 5200103 (finding the independent source doctrine applying the evidence first obtained pursuant to a general warrant).
[91] *See Carter*, 2022 WL 1561537; *Clark*, 2024 WL 4025008 (finding the independent source doctrine applying the evidence first obtained pursuant to an overbroad warrant).
[92] *Wilson v. Bethlehem Steel Co.*, 7 A.2d 906, 908 (Del. Super. 1939) (citing *Ajax Rubber Co. v. Gam*, 151 A. 831 (Del. Super. 1924); *Hackett v. Bethlehem Steel Co.*, 165 A. 332 (Del. Super 1933)).
[93] *Id*; *Wilmington Amusement Co. v. Pacific Fire Ins. Co.*, 21 A.2d 194, 196 (Del. Super. 1941).

i. *Carter* and *Clark* applied the independent source doctrine to subsequent warrants obtained after overbroad warrants.

The Superior Court first addressed the independent source doctrine's applicability to evidence obtained pursuant to an overbroad warrant in *State v. Carter*.[94] After recovering the defendant's smartphone during his arrest, a detective obtained a warrant to search information on the smartphone.[95] The defendant filed a motion to suppress the evidence extracted from the warrant and cited three supporting reasons: 1) the warrant lacked specificity; 2) the temporal period of the search was too expansive; and 3) the warrant did not establish probable cause that evidence of alleged criminal activity would be found on the smartphone.[96]

The State acknowledged that the temporal period was overbroad and that portions of the data sought were not supported by probable cause.[97] The State's position was that because the warrant was overbroad, evidence supported by probable cause should be identified and avoid suppression.[98] The State, in response to the motion to suppress, also represented that it anticipated the detective obtaining a second warrant to search the smartphone data, and that nothing obtained by the first warrant would be used to obtain the second warrant.[99]

---

[94] *Carter*, 2022 WL 1561537.
[95] *Carter*, 2022 WL 1561537, at *1.
[96] *Id.*
[97] *Id.*
[98] *Id.*
[99] *Id.*

18

The detective eventually obtained the second warrant.[100] The second warrant outlined a stricter temporal limitation and limited the types of data to be searched.[101] No information from the first warrant was used to obtain the second warrant, and the State maintained its position that there was probable cause to believe evidence of the defendant's alleged crimes may be found on the smartphone.[102]

The court held that the first warrant obtained by the detective was an overbroad warrant.[103] The court found that the temporal period exceeded probable cause, but that probable cause existed for the categories of data to be searched.[104] The court also held that the second warrant was validly executed because it was adequately supported by probable cause and was stated with sufficient particularity.[105]

The court's analysis did not end there. The court explained that "*regardless of whether Warrant 1 is a general or overly broad warrant*, because the State sought and obtained Warrant 2, the issue becomes whether Warrant 2 survives in lieu of Warrant 1's partial invalidity."[106] The court held the second warrant did survive due to the independent source doctrine.[107]

---

[100] *Carter*, 2022 WL 1561537, at *2.
[101] *Id.*
[102] *Id.*
[103] *Carter*, 2022 WL 1561537, at *3.
[104] *Carter*, 2022 WL 1561537, at *3-4.
[105] *Carter*, 2022 WL 1561537, at *4.
[106] *Carter*, 2022 WL 1561537, at *5 (emphasis added).
[107] *Carter*, 2022 WL 1561537, at *6.

The court held that the independent source doctrine applied to the second warrant for several reasons. First, the court asserted that if it "were to suppress all evidence obtained by the warrants at issue, the State would be put in a *worse* position than prior to the police misconduct."[108] Such a result would, in the court's view, "run afoul of the primary purpose of the exclusionary rule and wholly disregard [prior Superior Court] and United States Supreme Court decisions which . . . [propose] the State should *not* be put in a worse position simply because of some earlier police error or misconduct[.]"[109]

Second, the court pointed out that the defendant cited no cases "which stand for the proposition that a subsequent warrant obtained by the *same* information used to obtain a prior warrant invalidates the former."[110] The court explained it had addressed a similar situation in *State v. Blackwood*, where the independent source doctrine applied to evidence obtained pursuant to an overbroad warrant because the defendant gave valid consent for his smartphone to be searched.[111]

Third, the court found that the second warrant was "separate and apart" from the first warrant.[112] All of the information the detective used to obtain the second warrant was known to him prior to discovering any evidence from the first

---

[108] *Id.* (emphasis added).
[109] *Id.* (internal quotations omitted) (emphasis in original).
[110] *Id.* (emphasis in original).
[111] *Id*; *Blackwood*, 2020 WL 975465.
[112] *Carter*, 2022 WL 1561537, at *6.

warrant.[113]  The court noted that the information used to apply for both warrants was nearly identical, except that the second warrant application was stated with more particularity and used a shorter temporal limitation.[114]  The court therefore found any evidence obtained pursuant to the second warrant admissible through the independent source doctrine.

A few years later, the Superior Court heard an extremely similar case in *State v. Clark*.[115]  In *Clark*, a detective obtained a warrant to search the defendant's smartphone.[116]  After obtaining the warrant, the Supreme Court of Delaware issued its opinion in *Terreros*.[117]  The detective then obtained a revised warrant in response to the *Terreros* decision.[118]

The defendant filed motions to suppress the first and second warrant.[119]  The defendant argued the first warrant was either overbroad or general, with either type of unconstitutional warrant requiring a subsequent warrant to be deemed fruits of the poisonous tree.[120]  The State conceded that the first warrant was overbroad, but

---

[113] *Id.*
[114] *Id.*
[115] *Clark*, 2024 WL 4025008.
[116] *Clark*, 2024 WL 4025008, at *1.
[117] *Id.*
[118] *Id.*
[119] *Id.*
[120] *Clark*, 2024 WL 4025008, at *2.

denied it was a general warrant.[121]  The State also argued that the second warrant was permissible through the independent source doctrine.[122]

The court held the first warrant to be overbroad[123] and the second warrant to be permissible.[124]  Finding *Carter* instructive, the court drew similarities between the facts in both cases.[125]  The court highlighted that the first warrants obtained in both cases were found to be overbroad and applications for subsequent warrants in each case used information known independently from the first warrants.[126]

The court ultimately found that the independent source doctrine permitted evidence obtained from the second warrant to be admissible.[127]  The court reasoned that the independent source doctrine applied because nothing from the first warrant was used to obtain the second warrant.[128]  The court did, however, narrow the reasoning from *Carter* slightly: "It logically flows that where an original warrant [is overbroad] . . . and where the Court could properly excise the overbroad portions of the warrant, the [e]xclusionary [r]ule would not bar obtaining a subsequent, constitutionally complaint warrant."[129]

---

[121] *Id.*
[122] *Clark*, 2024 WL 4025008, at *4.
[123] *Id.*
[124] *Clark*, 2024 WL 4025008, at *4-5.
[125] *Id.*
[126] *Id.*
[127] *Clark*, 2024 WL 4025008, at *5.
[128] *Id.*
[129] *Id.*

ii. *Taylor* and *Matthews* applied the independent source doctrine to a subsequent warrant obtained after general warrants.

The Superior Court first addressed the independent source doctrine's applicability to evidence obtained pursuant to a general warrant in *State v. Taylor*.[130] As discussed herein, the court in *Taylor* subsequently withdrew and vacated its opinion. The Court therefore addresses the facts and legal analysis in *Taylor* solely because the court in *Matthews* relies upon *Taylor's* analysis in its decision and to place the *Matthews* decision in context. The Court does not rely on *Taylor* for any other purpose.

In *Taylor*, law enforcement found two smartphones while arresting the defendant.[131] An officer applied for a warrant to search the contents of the two phones.[132] The defendant filed a motion to suppress any evidence obtained pursuant to that warrant, alleging the warrant was an unconstitutional general warrant.[133]

The trial court denied the defendants motion and the defendant was convicted at trial.[134] Upon appeal, the Supreme Court of Delaware vacated the defendant's conviction and remanded for a new trial.[135] The Supreme Court found the warrant authorizing the search of the defendant's smartphones to be an unconstitutional

---

[130] *Taylor*, 2023 WL 8234469.
[131] *Taylor*, 2023 WL 8234469, at *1.
[132] *Id.*
[133] *Id.*
[134] *Id.*
[135] *Taylor*, 2023 WL 8234469, at *2.

general warrant.[136] The Supreme Court therefore ordered full suppression of the evidence obtained pursuant to the warrant.[137]

Following the Supreme Court's decision, and in anticipation of retrial, the State obtained a second, more limited warrant to search the defendant's smartphones.[138] The affidavit for the second warrant specifically averred that no evidence obtained from the first warrant was used to apply for the second warrant.[139] The defendant later moved to suppress evidence obtained from his smartphones.[140]

The defendant's motion advanced three arguments, among others: 1) the Supreme Court's finding that the first warrant was a general warrant meant the defendant was to be retried without tainted evidence obtained pursuant to the first warrant; 2) application of the independent source doctrine was contrary to the search and seizure jurisprudence regarding electronic devices; and 3) the second warrant did not meet particularity requirements.[141]

The State argued in response that the second warrant passed constitutional muster under the independent source doctrine.[142] The State also argued that the Supreme Court's decision was focused on the first warrant and did not prohibit

---

[136] *Id.*
[137] *Id.*
[138] *Id.*
[139] *Id.*
[140] *Id.*
[141] *Taylor*, 2023 WL 8234469, at *3.
[142] *Id.*

attempts to obtain subsequent warrants.[143] The State finally argued that the second warrant met particularity requirements.[144]

The court first held that the second warrant had been purged of the afflictions present in the first, unconstitutional general warrant.[145] The court then held that evidence obtained under the second warrant was admissible under independent source doctrine.[146] In determining the applicability of the independent source doctrine, the court employed the two-part test established in *Murray*.[147]

The court first found that law enforcement would have applied for a warrant to search the defendant's smartphones even if information obtained under the first warrant was never seen.[148] The court reasoned that because law enforcement applied for a warrant to search the smartphones pre-illegal search, that first warrant served as proof that the first step in *Murray* had been met.[149] The court then found that the probable cause articulated for the second warrant was independent of probable cause originating from the first warrant.[150]

The court also found that admitting evidence obtained under the second warrant did not conflict with the Supreme Court's prior ruling as the Supreme Court

---

[143] *Id.*
[144] *Id.*
[145] *Taylor*, 2023 WL 8234469, at *6-7.
[146] *Taylor*, 2023 WL 8234469, at *7-10.
[147] *Taylor*, 2023 WL 8234469, at *8-10.
[148] *Taylor*, 2023 WL 8234469, at *9.
[149] *Id.*
[150] *Id.*

"included no blanket prohibition on a second search warrant."[151]  The court viewed only evidence obtained under the first warrant tainted, not evidence obtained under the second warrant.[152]  The court explained that it would only violate the Supreme Court's order if it admitted evidence pursuant to the first warrant.[153]

In the court's view, the Supreme Court had not declared all evidence obtained under the first warrant "forever forbidden."[154]  This evidence could still be admitted if it was admitted in a constitutionally permissible manner—like pursuant to the legally appropriate second warrant.[155]  The court reasoned there was nothing gained from excluding such evidence when the evidence was admissible through an independent, legally appropriate manner.[156]

The *Taylor* opinion was later vacated,[157] but its reasoning was still adopted in *Matthews*,[158] an opinion issued shortly after.  In *Matthews*, a warrant was obtained to search the contents of the defendant's smartphone.[159]  The defendant was subsequently convicted at trial, and after the Supreme Court affirmed his conviction, the defendant filed a motion for postconviction relief.[160]

---

[151] *Taylor*, 2023 WL 8234469, at *10.
[152] *Id.*
[153] *Id.*
[154] *Id.*
[155] *Id.*
[156] *Id.*
[157] *State v. Taylor*, 2024 WL 1134119 (Del. Super. 2024).
[158] *Matthews*, 2024 WL 5200103.
[159] *Matthews*, 2024 WL 5200103, at *1.
[160] *Id.*

In *Matthews*, the Superior Court denied the motion, finding that even though the warrant was a general warrant, the defendant had provided his consent to search the phone.[161] Upon appeal, the Supreme Court granted the defendant's motion for post-conviction relief.[162] The Supreme Court found the defendant did not give valid consent to search his phone, and therefore the evidence obtained pursuant to the general warrant should have been suppressed in full.[163] The defendant was ordered a new trial.[164]

The State obtained a second warrant to search the defendant's smartphone, and the defendant filed a motion to suppress all evidence obtained under the second warrant.[165] The defendant argued allowing such evidence into admission would undermine the Supreme Court's decision finding the first warrant to be general.[166] The State argued that the independent source doctrine allowed the State to obtain a second warrant, and that the doctrine applied because the facts used to obtain the second warrant came from a source independent of the first warrant's taint.[167]

The court held that the evidence obtained pursuant to the second warrant was admissible under the independent source doctrine.[168] The court reasoned that:

---

[161] *Id.*
[162] *Id*; *Matthews v. State*, 319 A.3d 891 (Del. 2024).
[163] *Id.* at 905-06.
[164] *Id.* at 908.
[165] *Matthews*, 2024 WL 5200103, at *2.
[166] *Id.*
[167] *Id.*
[168] *Matthews*, 2024 WL 5200103, at *4.

> All Delaware Superior Court cases addressing the instant issue support the proposition that a second warrant for a cellphone obtained after a general or overly broad warrant is valid if the information supporting probable cause was discovered independently from the prior general or overly broad warrant.[169]

Highlighting the reasoning presented in *Carter*, *Clark*, and *Taylor*,[170] the court emphasized that the information used to obtain the second *Matthews* warrant was independent and without any basis from evidence obtained in the first warrant.[171] The court therefore found the independent source doctrine applied to the second warrant.

      iii.    The Superior Court cases that have discussed warrants and the independent source doctrine all use reasoning that transcends the distinction between general and overbroad warrants.

The Defendant's case before the Court shares the same core facts and legal issues as those present in *Carter*, *Clark*, and *Matthews*. An unconstitutional warrant was obtained to search the defendant's smartphone.[172] Evidence was then extracted pursuant to the unconstitutional warrant.[173] The State then obtained a second, more limited warrant to search data previously extracted under the first warrant.[174]

The question posed in each of these cases, including the Defendant's, is not what remedy is required for the unconstitutional warrant. The Supreme Court has

---

[169] *Matthews*, 2024 WL 5200103, at *3.
[170] *Matthews*, 2024 WL 5200103, at *3-5.
[171] *Matthews*, 2024 WL 5200103, at *5.
[172] First Warrant.
[173] D.I. 27 at 3.
[174] Second Warrant.

answered that question clearly and continuously.[175]  The remedy for an unconstitutional warrant—under the exclusionary rule—is either full or limited suppression of evidence obtained pursuant to the warrant.[176]

The question posed to this Court presently, and to the courts in *Carter*, *Clark*, and *Matthews*, is whether an *exception* to the exclusionary rule—the independent source doctrine—permits evidence suppressed under an unconstitutional warrant to be admitted under a second, constitutional warrant.  These separate questions appear to have been blurred by defendants, particularly in the general warrant context.

The Defendant, as the defendant in *Matthews* did, argues that full suppression means full suppression.[177]  In other words, once a piece of evidence is tainted by a general warrant and deemed suppressed, the evidence is forbidden and without the possibility of cure. Under this argument, admitting that same evidence under the independent source doctrine would constitute limited, not full suppression of evidence obtained pursuant to a general warrant.

That assertion may be true practically, but it is not so legally.  If an exception to the exclusionary rule applies to tainted evidence, that evidence is "purged of the taint."[178]  When evidence is "purged of the taint," the exclusionary rule does not bar

[175] *Taylor*, 260 A.3d at 617; *Terreros*, 312 A.3d at 663.
[176] *Taylor*, 260 A.3d at 617; *Terreros*, 312 A.3d at 663.
[177] D.I. 24 at 1-2; D.I. 28 at 1-2.
[178] *Lopez-Vazquez*, 956 A.2d at 1292.

the evidence from being admitted at trial. The exclusionary rule—and remedies like full and limited suppression—no longer apply to the cured evidence.

Under this framework, the Court agrees with the Superior Court's prior holdings that the independent source doctrine is applicable to evidence obtained under both general and overbroad warrants. *Carter*, *Clark*, and *Matthews* all used similar reasoning to conclude that that evidence obtained through a second warrant was admissible after an unconstitutional warrant was obtained.

Each decision found the independent source doctrine applicable because no tainted evidence from a first warrant was used to procure a second warrant.[179] The second warrants were "separate and apart" or completely independent from the first warrants. These cases also recognized the limited deterrence achieved by fully suppressing evidence under these circumstances,[180] and that the purpose of the exclusionary rule was not to place the State in a worse position then if misconduct had not taken place.[181]

The Court agrees with and adopts these considerations, which transcend the distinction between general and overbroad warrants, as displayed in *Carter*, *Clark*, and *Matthews*. The independent source doctrine, if applicable, removes evidence

---

[179] *Carter*, 2022 WL 1561537, at *6; *Clark*, 2024 WL 4025008, at *5; *Matthews*, 2024 WL 5200103, at *4.
[180] *Carter*, 2022 WL 1561537, at *6; *Matthews*, 2024 WL 5200103, at *4.
[181] *Carter*, 2022 WL 1561537, at *6; *Matthews*, 2024 WL 5200103, at *4.

from subjection to the exclusionary rule, including either full or limited suppression. The critical distinction between general and overbroad warrants is therefore inapplicable under the independent source doctrine, justifying its use for either type of unconstitutional warrant.

3. *The exclusionary rule's sole purpose of deterrence remains preserved if the independent source doctrine is applied to evidence obtained through a general warrant.*

The exclusionary rule plays a singular but vital purpose—deterring future Fourth Amendment violations.[182] Any carveout, or the expansion of a carveout to the exclusionary rule, could weaken the rule's deterrent effect.[183] The Court has therefore considered whether the exclusionary rule will be weakened significantly if the independent source doctrine applies to evidence obtained under a general warrant. For the reasons stated below, it is not.

i. The two-part test determining whether the independent source doctrine applies ensures law enforcement does not profit from unconstitutional searches.

Before the independent source doctrine can purge tainted evidence, a court must first find that the independent source doctrine applies.[184] The United States Supreme Court in *Murray* provided the test for independent source doctrine

---

[182] *Davis* 564 U.S. at 236-37 (citations omitted).
[183] *Leon*, 468 U.S. at 907 n.6.
[184] *Murray*, 487 U.S. at 541.

31

applicability,[185] and the test serves as a protection against the independent source doctrine being used as a mechanism to profit from illegal searches.

Under the *Murray* test, the first hurdle law enforcement must clear is that they would have applied for a warrant had misconduct not occurred.[186] This step protects against what the Court will term a "tip-off" for law enforcement. An illegal search may reveal something of which law enforcement was previously unaware and be the only source that leads law enforcement to pursue it. The *Murray* test accounts for this potential profit by law enforcement by only allowing the independent source doctrine to apply if a warrant would be sought before the illegal search.[187]

The second hurdle law enforcement must clear under the *Murray* test is that there must be probable cause for a second warrant that was independent from an illegal search.[188] This step protects against law enforcement using unlawfully obtained evidence or information to create an otherwise valid warrant. The *Murray* test accounts for this potential profit by not allowing the independent source doctrine to apply when independence from tainted evidence is not present.[189]

The *Murray* test anticipates law enforcement workarounds and isolates the independent source doctrine from profits to law enforcement via illegal searches.

---

[185] *Id.*
[186] *Id.*
[187] *Id.*
[188] *Id.*
[189] *Id.*

Because absence of profit from illegal searches is a prerequisite to applying the independent source doctrine,[190] any profit from illegal searches the independent source doctrine could enable is screened out by the *Murray* test. The independent source doctrine therefore does not weaken the exclusionary rule because it offers no additional incentives for law enforcement to conduct illegal searches.

ii. The judiciary serves as an extra layer of protection against incentives to apply for general warrants.

General warrants authorize deep intrusions into privacy, especially if authorized searches are for something as revealing as a smartphone.[191] But that search would still be based on a warrant that, albeit wrongfully, was reviewed and approved by a member of our judiciary.[192] This differs from a constitutional violation like illegal entry without a warrant, where a law enforcement officer authorizes him- or herself to enter and search an individual's home. Similar reasoning could be applied to *Terry* stops as well.

The warrant process therefore provides an additional safeguard against any incentive the independent source doctrine could provide law enforcement to seek general warrants—general warrants would remain subject to judiciary approval.[193]

---

[190] *Id.*
[191] The Supreme Court of Delaware has adopted the view from *Riley v. California* that a smartphone search "typically expose[s] to the government far more than the most exhaustive search in a house." *Taylor*, 260 A.3d at 613 (citing *Riley v. California*, 573 U.S. 373, 396 (2014)).
[192] 11 *Del. C.* 2307(a).
[193] *Id.*

Human error and the evolution of law do not make the judiciary a full-proof protection against general warrants, but the judiciary is a strong protection nonetheless. Delaware statutory law requires approval of a warrant by a judiciary member;[194] therefore most illegal searches pursuant to a general warrant would be curtailed before they ever even begin.

## B. The independent source doctrine applies to evidence obtained under the Second Warrant.

Now that the Court has determined that the independent source doctrine can apply to evidence obtained under a general warrant, the Court must determine whether the independent source doctrine applies to evidence obtained pursuant to the Second Warrant. Upon reviewing the record and deploying the two-part test outlined in *Murray*, the Court finds that it does.

### 1. *The State would have applied for a warrant without the material obtained under the Second Warrant.*

The Court finds the State would have applied for a warrant to search the Defendant's smartphone without the material obtained under the First Warrant. The Court needs to look no further than the First Warrant, which was sought pre-illegal search.[195] The First Warrant sought to search the same categories of data that the Second Warrant sought to search.[196] The application for the First Warrant also used

---

[194] *Id.*
[195] First Warrant.
[196] First Warrant; Second Warrant.

the same facts as those used to obtain the Second Warrant.[197]  The First Warrant is

therefore evidence that the first step in the *Murray* test is satisfied.

> 2. *The Second Warrant was supported by probable cause independent of the evidence and information acquired through the First Warrant.*

The Court finds the Second Warrant was supported by probable cause

independent of the material obtained through the First Warrant.  The Second

Warrant's affidavit asserts that nothing obtained under the First Warrant was used to

apply for the Second Warrant,[198] and no part of the record suggests otherwise.  The

facts used to obtain the Second Warrant are identical to those from the First Warrant,

and no new information or evidence was included.[199]  The second step in the *Murray*

test is therefore satisfied.

## C. The Second Warrant obtained by the State is an overbroad warrant.

While the independent source doctrine applies to evidence obtained under the

Second Warrant, all evidence obtained under the Second Warrant is not

automatically admissible.  The Second Warrant must still be assessed for the

probable cause and particularity requirements demanded under Delaware law.[200]

After conducting this assessment, the Court finds the Second Warrant to be an

unconstitutional overbroad warrant.

---

[197] First Warrant; Second Warrant.
[198] Second Warrant.
[199] First Warrant; Second Warrant.
[200] 11 *Del. C.* 2307(a).

1. *There was probable cause to search all categories of data applied for in the Second Warrant.*

All three categories of data to be searched in the Second Warrant were supported by probable cause.[201] The Second Warrant first requested to search "[d]evice information, including IMEI, [s]erial number, and phone number."[202] The Second Warrant's affidavit explained that this information would be used to identify the owner of the smartphone found on the Defendant's person on February 6, 2025.[203] The facts forming probable cause to search this information are numerous.

A camera was found in the victim's shower, and the camera was attached to wiring leading to the victim's basement.[204] The Defendant installed the shower and had exclusive access to the house at one point.[205] When the Defendant was over, he spent almost all his time in the basement, where the victim once found an old iPhone charging.[206] An iPhone was later found on the Defendant's person.[207] The camera recordings were only accessible through another electronic device, like an iPhone.[208]

---

[201] "To establish probable cause, the police are only required to present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability that the defendant has committed a crime." *McKinney v. State*, 107 A.3d 1045, 1047 (Del. 2014) (quoting *State v. Maxwell*, 624 A.2d 926, 930 (Del. 1993)).

[202] Second Warrant at 1.

[203] *Id.* at 5-6.

[204] *Id.* at 3-4.

[205] *Id.* at 4.

[206] *Id.*

[207] *Id.* at 5.

[208] *Id.* at 4-5.

These facts form a reasonable belief that the smartphone found on the Defendant belonged to him and evidence of the alleged offense would be found on the iPhone.

The Second Warrant next requested to search "[s]aved digital images and video."[209] The Second Warrant's affidavit explains that this category of data is where "videos, photographs, and still shots . . . of the victim showering" would be found.[210] The same set of facts listed above form a reasonable belief that the smartphone found on the Defendant would contain evidence of the alleged offense.

The Second Warrant finally requested to search the "USEE PLUS [a]pplication."[211] Based on the type of camera discovered in the victim's shower, law enforcement knew the USEE PLUS application was required to access the camera's recordings.[212] Law enforcement was also aware USEE PLUS could be downloaded on an iPhone.[213] These facts, along with those potentially connecting the Defendant to the camera, form a reasonable belief that the USEE PLUS application was located on the smartphone to be searched and would show evidence of the alleged offense.

---

[209] *Id.* at 1.
[210] *Id.* at 6.
[211] *Id.* at 1.
[212] *Id.* at 4, 6.
[213] *Id.* at 6.

2. *The temporal period prescribed for the search exceeded probable cause for the search of the Defendant's smartphone.*

The Second Warrant limited the search of data on the smartphone found on the Defendant to a timeframe starting on November 21, 2021, at 0000 hours and ending on January 9, 2025, at 1235 hours eastern standard time.[214] According to the Second Warrant's affidavit, this timeframe spans "the date the victim moved out of the home . . . during which time [the Defendant] had full access to the residence" to "when the camera was located and removed."[215]

The Court finds that this timeframe far exceeds the probable cause to search the smartphone. When the Court conducts a four corners review of the affidavit, none of the facts support the camera being installed between the time the victim left her residence in November 2021 and when she returned in August 2022. The State simply makes an inference that the camera was installed during this period.

The affidavit does, however, contain a key fact that provides probable cause to search the Defendant's smartphone starting "several months" before the camera was found.[216] The affidavit recounts that "[t]he victim stated that *several months ago* she went to the basement to use the bathroom . . . While in the bathroom the victim advised that she noticed an old iPhone charging[.]"[217]

---

[214] *Id.* at 6.
[215] *Id.*
[216] *Id.* at 4.
[217] *Id.* (emphasis added).

Finding an iPhone in the same bathroom that wiring from the camera led amounts to probable cause that the camera was installed and operating at that time. The Court therefore finds that the temporal limitation in the Second Warrant was overbroad. The search of the smartphone should be limited to the "several months" before the camera was discovered. Because "several" is not defined, the Court finds that four months prior to the discovery of the camera is the appropriate timeframe for the search.[218] No other facts in the Second Warrant's affidavit provide probable cause for an alternative temporal limitation.

3. *The categories of data to be searched under the Second Warrant were stated with sufficient particularity with exception of the "saved digital images and videos" category.*

The Second Warrant states with sufficient particularity two of the three categories of data to be searched on the smartphone found on the Defendant.[219] The type of "device information" sought from the smartphone are listed and limited in the Second Warrant.[220] The data category "Applications" is limited to a singular application—USEE PLUS.[221]

---

[218] Several is defined as "more than two but fewer than many." MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/several (last visited Mar. 5, 2026). "Many" is defined as "a large number of persons or things." MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/many (last visited Mar. 5, 2026).

[219] *Id.* at 1.

[220] *Id.*

[221] *Id.*

The "saved digital images and video" category, however, could have been stated with more particularity.[222] The Second Warrant affidavit properly identifies the "Photos" application on an iPhone as a place to be searched with this category of data but then suggests "there are other applications that can be downloaded where videos, photographs, and still shots can be stored."[223]

The Second Waarant could have identified these "other applications" in the list of applications to be searched, or at the very least described in more detail the type of applications where evidence was anticipated to be found. Instead, the Second Warrant purports to only seek a search of one application while suggesting it can also search others.[224] The Court finds the Second Warrant states with sufficient particularity two applications to be searched: the Photos application and USEE PLUS. Without more particularity, no other applications are searchable.

## D. Conclusion

The Court first holds the independent source doctrine applies to evidence obtained pursuant to a general warrant. The Court next holds the independent source doctrine can be used to admit evidence obtained under the Second Warrant. The Court finally holds that the Second Warrant is an unconstitutional overbroad warrant, and that the temporal limitation for the search of the smartphone must be shortened

---

[222] *Id.*
[223] *Id.* at 6.
[224] *Id.* at 1, 6.

to match probable cause.  The State's search of the smartphone is also limited to the applications specifically identified in the Second Warrant.  The Motion is therefore GRANTED in part, and DENIED in part.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**